## ELDER, *plf. in equity vs.* ELDER.

A. in writing agreed to convey to B. on the payment of a certain agreed sum " a lot of land situated in the town of *Windham.*"   B. alleging that there was a mistake in the contract, — that *the whole* of a particular lot was intended to be embraced by it, though a part of the lot lay in the town of *Westbrook,* brought his bill in equity to have the mistake corrected, and specific performance decreed, of the contract *as amended.   Held,* that *parol evidence* was inadmissible to vary the terms of the written contract, according to the prayer of the bill.

THIS was a *bill in equity,* in which the plaintiff alleged that on the 17*th* of *October* 1830, he contracted with *Reuben Elder,* now deceased, for the purchase of a certain lot of land lying in the towns of *Windham* and *Westbrook,* being one parcel, and not several, though accidentally intersected by the boundary line of those towns, said lot being the entire share of *Reuben Elder* in the real estate of *John Elder,* deceased, which had been set off according to the will of the latter.   That he agreed to pay therefor the sum of $300 by instalments as follows : $100 in three months — $100 in one year — $50 in two years, and $50 in three years.   That it was agreed the deed should be given on the payment of the first instalment.   That $25 was paid to *Reuben Elder* before his decease in part of the first instalment, and after his decease, to Elizabeth Elder, his widow and administrator $75 more, being the balance of the first instalment.   He further alleged that a memorandum *intended* to

express the foregoing agreement was signed by *Reuben Elder*, in which the land intended to be conveyed was described as "a lot of land situated in the town of *Windham*, formerly "owned by *John Elder*." That there was *a mistake* in writing the memorandum of agreement, inasmuch as part of the lot intended to be embraced in the description was in the town of *Westbrook*. That at the time of making the contract he was ignorant of this fact. That he believed if *Reuben Elder* was living, he would not hesitate to correct this mistake, and to fulfil his agreement by conveying the whole lot. But that the administrator and heirs at law had refused. These he prayed might be summoned in to answer the foregoing allegations, and certain inquiries put to them, with regard to conversations had with *Reuben Elder*, and admissions made by him.

The bill closed with a prayer that the mistake in the contract before named might be corrected, and that the administrator and heirs might be required to convey to him by deed the whole lot claimed — and also for such general relief as the Court might grant.

*Elizabeth Elder*, the widow and administrator of *Reuben Elder*, in her answer set out the written contract between her deceased husband and the plaintiff, in the words following : —

"*Gorham, Aug.* 17, 1830.

"I *Reuben Elder* do agree to sell to *Josiah Elder* a lot of "land situated in *Windham* formerly owned by *John Elder* for "three hundred dollars. — One hundred dollars in three months "— the first year one hundred dollars — the second year fifty "dollars — the third year fifty dollars — the deed to be given "when the first hundred dollars is paid.

"*Reuben Elder*."

She denied all knowledge of any other agreement than the above and averred her disbelief of the existence of any mistake in the contract, as alleged by the plaintiff.

The answers of the other defendants were substantially the same as the foregoing — all averring a willingness to convey the land lying in *Windham* according to the terms of the contract, and no more.

Several depositions were taken by the plaintiff tending to prove, by the admissions of *Reuben Elder,* and otherwise, that there was in fact *a mistake* in the contract as alleged in the bill — and the principal question in the case was upon the admissibility of this testimony.

*Daveis,* in opening for the plaintiff, to the point that parol testimony is admissible to correct the mistake in the contract, cited the following authorities : 1 *Maddox Chan.* 49 ; 2 *Atkins,* 33 and 50 ; *Sugden on Vendors,* (2d. ed.) 107, *et sequitur,* and cases there cited ; *Bradbury v. White,* 4 *Greenl.* 391 ; *Dunlap v. Stetson,* 4 *Mason,* 349 ; *Washburn v. Merrill,* 1 *Bay's Cas. in Error,* 139 ; *Marks & al. v. Pitt,* 1 *Johns. Chan. Cas.* 594 ; *Lyman v. U. S. Ins. Co.* 1 *Johns. Chan. Cas.* 630 ; *Gillespie v. Moon,* 2 *Johns. Chan. Cas.* 585 ; *Abbey v. Goodwin,* 7 *Con. R.* 377 ; *Avery & ux. v. Chappel & al.* 6 *Con. R.* 270 ; *Patterson v. Hull,* 9 *Cowen,* 747 ; *Davenport v. Mason,* 15 *Mass.* 85 ; *Brown v. Gilman,* 13 *Mass.* 158 ; *Wilkins v. Scott,* 17 *Mass.* 251 ; *Codman v. Winslow,* 10 *Mass.* 146 ; *Leland v. Stone,* 10 *Mass.* 459 ; *Fowle v. Bigelow,* 10 *Mass.* 379 ; *Hathaway v. Spooner,* 9 *Pick.* 23 ; *Allen v. Bates,* 6 *Pick.* 460 ; *Sugden on Vendors,* 87 to 94 ; *Fonblanque's Eq.* ch. 3, sec. 6 ; 1 *Starkie's Ev.* 1027.

2. To the point that the defendants could only avail themselves of the statute of limitations by plea, he cited, 1 *Beawes,* 177 ; *Watts v. Waddle,* 6 *Peters' R.* 589.

3. The parties are not confined to cases where they have *no remedy* at law. 3 *Black. Com.* 434 ; *King v. King,* 7 *Mass.* 496.

*Longfellow,* for the defendants, argued that the granting the prayer of this bill would virtually be repealing the statute of frauds. This statute requires all contracts for the sale of lands to be *in writing.* The real contract between the parties in this case is in writing. It is plain and susceptible of a reasonable construction. But the plaintiff by this bill proposes to alter, vary and destroy it, by superadding to it matter gathered from the loose and uncertain recollections of witnesses. This, the law will not permit. It excludes all parol testimony offered to explain, alter or vary written contracts. The bill

proposes to the Court to *make* a contract between the parties, and then to enforce it. But the statute of frauds is as binding upon this Court sitting as a court of chancery as if sitting as a court of law.

Against the admission of parol evidence under the circumstances of this case, he cited the following authorities. *Maddox Chan.* 405, 406 ; *Manning v. Lechmore*, 1 *Atkins*, 453 ; *Ramsbottom v. Jordan*, 1 *Vesey & Beames*, 165 ; 13 *Vesey*, 50 ; *Butler v. Cook*, 1 *Schoale & Lefroy's R.* 39 ; *Pyms v. Blackburn*, 3 *Vesey*, 34 ; *Lawson v. Lord*, *Dickens*, 346, 554 ; *Rich v. Jackson*, 4 *Broke's Chan.* 514 ; *Hunt v. Rousmanier*, 2 *Mason*, 342 ; *Colson v. Thompson*, 2 *Wheaton*, 341 ; *Dwight v. Pomeroy*, 17 *Mass.* 354.

The rules of evidence, he contended, were the same at law as in equity, and upon no principles could this testimony be admitted.

The authorities cited by the plaintiff's counsel in which parol evidence was admitted to correct a mistake in, or to explain a written contract, (with the exception of *Gillespie v. Moon*,) related to personal property. This relates to real estate. A manifest and palpable distinction exists between the cases.

The chancery jurisdiction of this Court is limited to cases where the parties have not a fair, full, and adequate remedy at law. In this case the law does afford that adequate remedy. The contract is in writing, — is plain and unambiguous, — and may be enforced at law by either party.

*Daveis* in reply. The principle that excludes parol testimony where there was a written contract, goes upon the ground that all the *colloquia* were reduced to writing by the contract. This is a principle of the common law, and derives no force or authority from the statute of frauds. The plaintiff's object in this case may be accomplished, without infringing in any respect upon that statute.

The general rule is admitted, that parol evidence is inadmissible to explain written contracts. But in a case in *Dutton* a distinction is drawn between the *operative* and *descriptive* parts of the contract. In regard to the latter, parol evidence is held to be admissible. This is an exception to the common

law principle. In the present case, the *description* is imperfect, and we ask leave to introduce parol evidence to perfect it.

Another case where parol evidence was admitted was *Brown v. Gilman*, before cited, where *a name* was corrected.

The case of *Naylor v. Naylor*, Wheaton, in opposition to the principle of *Brown v. Gilman*, is now abandoned as unsound law.

If the mistake can be corrected, it follows that parol evidence may be admitted. A mistake can never be shown but by parol.

In *Hunt v. Rousmanier*, it is true, the relief sought was the correction of a mistake by parol, and was denied. But the distinction between that case and this is clear. Where the parties have made a mistake as to the effect or legal consequences of their contract, a court of equity will afford no relief; which was the case in *Hunt v. Rousmanier*. The plaintiff seeks relief here on an equity independent of, and distinct from, a sense of the instrument. This is the ground on which relief is sought. This is the only ground upon which a court of equity can go in granting it.

It is said by the counsel for the defendants, that the rules of evidence in law and equity, are the same. This is denied. There is a very broad and marked distinction. The two systems are diverse. In one, the parties are permitted to testify, in the other, not. Here is an early, and marked difference established. Another, is found in the doctrine of *part performance*. This is a doctrine in equity, but not in the law. Again, it may be found in the doctrine of *resulting trusts*. These, may be proved by *parol* in courts of equity, but not in courts of law. Such have been the decisions in *Maine*, as to the latter; and in *New-York* and *New-Hampshire*, as to the former. Such is the doctrine in *England*.

It is confidently believed that the statute of frauds presents no obstacle to the prayer of the plaintiff. Very soon after the passage of that statute, which is understood to have been drawn by *Lord Nottingham*, a case came before him, in which he admitted parol evidence to correct a mistake in a deed. But at all events this statute is for the benefit of those who choose to avail themselves of it. The Court will not apply it *ex officio*.

It is like the privilege of pleading infancy, which a defendant may avail himself of or not. In this case the statute of frauds was not pleaded as it should have been, if intended to be relied on.

WESTON J. delivered the opinion of the Court.

The plaintiff claims relief upon the ground of mistake in the terms of a contract, entered into between himself and *Reuben Elder*, deceased ; and he prays for an amendment and enforcement of the contract, according to the true intent and meaning of the parties, and for such general relief as the Court may grant. All knowledge of the existence of a mistake being denied in the answers, the plaintiff has proceeded to adduce parol proof of the allegations in his bill.

This kind of proof is objected to by the counsel for the defendants, as incompetent to alter, vary, or contradict a written instrument, plain and intelligible in its terms. That this is inadmissible at law, is a principle well settled. And it is insisted that it is a rule of evidence equally binding upon courts of equity. If the inquiry was, what contract have the parties made, this is to be ascertained by the best evidence the nature of the case admits. It is the rule at law, because calculated to elicit and establish truth. And what is best adapted to produce this effect, does not depend upon the character or jurisdiction of the tribunal before whom the question may arise. It would tend to pervert, rather than to establish, justice, if the rules of evidence were so varied in different courts, that in the one, facts were to be proved by the best evidence, while in the other, that of an inferior character might be received and substituted. We do not so understand the law. What contract the parties have actually made, must depend upon the same evidence, both at law and in equity. And if made in writing, what is written is the best evidence of this fact, which cannot be varied, altered or changed by parol testimony. But in both courts, it may be shown by parol evidence to have been tainted by fraud, and therefore not binding or operative upon the party attempted to be charged. But in a court of equity, other circumstances may in certain cases become the subject of inquiry,

not to show what contract was made ; but whether it was made or entered into by mistake or accident. Whether these inquiries have promoted the cause of justice, or whether they have not more frequently defeated it, by opening a door to fraud and perjury, or whether they may not occasion more mistakes than they correct, are questions, which it does not belong to us to decide. This branch of equity jurisdiction is of recent origin in our State ; but having been conferred upon this Court, it is to be exercised according to the rules and practice of courts of equity in that country from which we have derived our jurisprudence, except so far as they may have been changed or modified by our laws. We have jurisdiction expressly given in cases of mistake. How are they to be proved ? They must depend upon extraneous testimony. They are rarely apparent upon the face of the instrument to be affected. Although its terms may often lead to a conjecture that there may have been some mistake, the fact must almost uniformly be proved *aliunde*. It may often be made out, or rendered highly probable, by a recurrence to other written evidence ; as where the instrument executed is found not to conform to a previous written agreement, in relation to the subject matter. And yet this is not conclusive ; for it might very fairly be urged in comparing both, that the variance was designed and occasioned by the consent of the parties. Parol testimony is so generally admitted in chancery to prove a mistake, that in *Baker v. Paine*, 1 *Vesey*, 456, *Lord Hardwick* inquired, " how can a mistake in an agree-" ment be proved but by parol ?"

It is well settled that it is admissible on the part of the defendant, upon a bill for the specific performance of a contract. The reason assigned is, that this is a class of cases in which a court of equity will exercise or withhold its power at its discretion, and that it will not interfere in favour of the plaintiff to enforce performance, where a mistake essentially affecting the contract is made to appear. *Joynes v. Stratham*, 3 *Atk.* 388 ; *Rich v. Jackson*, 4 *Bro. C. C.* 514 ; *Ramsbottom v. Gosden*, 1 *Vesey & Beames*, 165 ; *Townsend v. Stangroom*, 6 *Vesey*, 328, and the cases there cited.

In *Gillespie v. Moon*, 2 *Johns. Ch.* 585, the learned Chancellor

maintains that relief may be had in chancery against any deed or contract in writing, founded in mistake or fraud. That the mistake may be shown by parol proof, and relief granted to the injured party, whether he sets up the mistake affirmatively by bill, or as a defence. We have looked into the cases cited by him, but are not satisfied that they sustain the doctrine to the extent which his language would seem to imply. In some of them parol evidence of mistake was admitted on the part of the defendant, to rebut an equity. In others, contracts not relating to real estate, but of a personal character, were reformed or amended upon parol proof of mistake. These cases show that this has sometimes been done in courts of equity; but under what circumstances, it is unnecessary to state, as the contract before us is one relating to real estate.

Others are referred to, where mistakes in marriage settlements have been corrected by proof *aliunde*. In all these cases, there was written evidence to amend by; either resulting from the plain intentions of the parties, although defectively expressed, or from previous instructions, or subsequent declarations, in writing. In *Rogers v. Earl, Dickens*, 294, the facts of which are reported in *Sugden's* law of vendors, 124, it plainly appeared by the settlement that the wife was to have the power she exercised in favour of her husband, but by an omission by mistake of the limitation to the wife for life, and to trustees to preserve contingent remainders, which were required by written instructions, the power could not without correction be legally exercised, to effect which the settlement was ordered to be rectified.

In *Watts v. Bullas, Peere Williams*, 60, a voluntary conveyance to a brother of the half blood defective at law, was sustained in equity against the heir at law, the Lord Keeper being of opinion that as the consideration of blood would at common law raise a use, the same consideration would in that imperfect conveyance raise a trust, which ought to be made good in equity. The authority of this case however was controverted by *Lord Hardwick*, in *Gowing v. Nash*, 3 *Atk.* 189.

In *Randall v. Randall*, 2 *Peere Williams*, 464, the husband executed a deed, in which he acknowledged a mistake in the family settlement, to correct which he covenanted that he would

stand seised of the premises in trust for himself and his wife for their joint lives, remainder in trust to the heirs of their two bodies, remainder in trust for the wife and her heirs, with a covenant from the husband to convey the premises to these uses. And the lands were decreed to be settled accordingly.

In *Barstow v. Kilvington,* 5 *Vesey,* 593, the wife, after the decease of the husband, wrote to the plaintiff, *Barstow,* who was about to marry one of her daughters, informing him in what manner she had agreed to settle the estate in question. The marriage took effect. By the legal construction of the settlement referred to in the letter, the daughter was entitled to a less portion ; but the settlement was reformed according to the letter, against the heir at law of the wife. Upon a bill in equity founded upon the letter, she would have been bound to have made good the agreement as there set forth, and her heir at law coming in under her, was affected by the same equity.

*Chancellor Kent* further cites cases, where defects in mortgages have been made good against subsequent judgment creditors, who came in under the party bound in conscience to correct the mistake. As where A. surrenders a copyhold by way of mortgage, but the surrender was not presented at the next Court, and then became a bankrupt, this mortgage was held good in equity against his assignees. *Finch v. The Earl of Winchelsea,* 1 *Peere Williams,* 277. And so, as was held in that case, an agreement in writing to convey, upon an adequate consideration paid, is a lien in equity upon the land, against the judgment creditors of the party, although not against a mortgagee without notice. But the assignees of a bankrupt are affected by every equity, which would bind the bankrupt himself.

We do not regard the precedents in relation to personal contracts as authorities in this case, which having relation to real estate, is under the protection of the statute of frauds. That statute is not formally pleaded ; but the contract actually executed in writing is set forth in the answer, and it is relied upon by the counsel for the defendants, to repel the parol proof, set up by the plaintiff to vary its terms.

Marriage settlements are little known or used in this State ;

and although sometimes rectified or reformed in *England*, where mistakes have intervened, yet we have not found any case of the kind, where this has been done upon parol testimony, without written evidence to amend by ; nor are we aware that it could be done, without violating the statute of frauds.

In respect to mortgages, we have a system of our own, depending on statute, which varies in many respects from the law, as administered in the English courts of equity, and in the State of *New-York.*

But the case of *Gillespie v. Moon*, itself, is relied upon as an authority in favour of the plaintiff. The defendant there had agreed to purchase two hundred acres of land, the location and bounds of which were well understood. But by mistake, clearly proved by parol, the deed embraced fifty acres more. The defendant perceiving his advantage, although he acknowledged the mistake to several persons, insisted upon holding all the land covered by his deed. This claim, so clearly against equity and good conscience, was strongly tinctured with fraud ; for there is little difference in moral turpitude, between fraudulently making a deed conveying more than is intended by the parties, and attempting to hold the same advantage, where it arises from mistake or accident. Indeed fraudulent conduct is distinctly imputed to him in the opinion of the Court. The Chancellor says, " the only doubt with me is, " whether the defendant was not conscious of the error in the " deed, at the time he received it and executed the mortgage, " and whether the deed was not accepted by him in fraud, or " with a voluntary *suppression of the truth*. That fraudulent " views very early arose in his mind, is abundantly proved." If it was a case of fraud, as well as of mistake, there could be no question either of the admissibility of parol testimony, or that the plaintiff was entitled to relief. Indeed he would have been so entitled at law. But the measure of relief would have varied. At law, a fraudulent deed is entirely void. In equity, its effect may be defeated only so far as it is intended to have a fraudulent operation. But aside from the fraudulent views, which may always be imputed to a party, who would take advantage of a mistake, that alone may be regarded in

equity as an infirmity calling for relief, where it goes to the whole subject matter of a conveyance, or where it affects only a part of it.    It is not charging a party upon an executory contract in relation to real estate, which cannot be enforced unless in writing; but it shows defects to defeat the operation of a written contract.    It is in the nature of an injunction upon a party, not to avail himself of an advantage against good conscience. It does not make a new contract, but examines the quality, extent and operation of one formally executed by the parties.    It is one thing to limit the effect of an instrument, and another to extend it beyond what its terms import.    A deed by mistake conveys two farms, instead of one.    If the suffering party is relieved in such a case by a court of chancery, full effect is not given to the terms of a written instrument.    But the statute of frauds does not prescribe what effect shall be given to contracts in writing ; it leaves that to be determined in the courts of law and equity.    A deed conveys one farm, when it may be proved by parol that it should have conveyed two. Here equity cannot relieve, without violating the statute.    To do so, would be to enforce a contract in relation to the farm omitted, without a memorandum in writing, signed by the party to be charged, or by his authorised agent.    These are distinctions, which may be fairly taken, between the case cited from *New-York*, where the plaintiff sought to be relieved from the undue operation of a deed, which conveyed too much, and the case before us, where the prayer of the plaintiff is, that a contract in writing may be so extended by parol testimony, as to embrace more land than that contract covers.    But whether this Court, sitting as a court of equity, would receive parol evidence of a mistake in a deed, to restrain its operation, it is not necessary to decide.    There may be great appearance of equity in such a proceeding ; but it may admit of question, whether more perfect justice would not be administered, by holding parties to abide by their written contracts, deliberately made, and free from fraud.    As far as this rule has been relaxed by the clear, unequivocal, and settled practice of chancery, we are doubtless bound by it, in administering that part of our system,

but we are not disposed to adopt any new or doubtful exception to so salutary a rule.

In *Jordan v. Sawkins*, 3 *Bro. C. C.* 388; 1 *Vesey*, 402; *Rich v. Jackson*, 4 *Bro. C. C.* 514; *Clinan v. Cooke*, 1 *Shoales & Lefroy*, 22; *Woollam v. Hearn*, 7 *Vesey*, 211, and in *Higginson v. Clowes*, 15 *Vesey*, 516, the doctrine maintained is, that a party seeking the specific performance of an agreement, and proposing to introduce new conditions, or to vary those which appear in a written instrument, will not be permitted to do so by parol testimony. And in *Dwight v. Pomeroy & al*, 17 *Mass.* 303, *Parker C. J.* regards this principle as fully settled by the more recent chancery decisions in *England*, and that a few cases, bearing a different aspect, have been explained away or overruled by subsequent decisions.

Upon full consideration of the authorities, we are of opinion, that the plaintiff has not made out his case by competent proof. The bill is accordingly dismissed; but without costs, as there is reason to doubt whether the written instrument truly expresses what had been agreed between the parties.