# Albert W. Holthouse, Appt., *v.* George B. Rynd.

To enable a party to enforce specific performance, the agreement must contain the exact terms of the contract and a description of the property.

Where one agreed in writing to sell a "lot on the right hand side of S. Street going towards the river, being twenty feet wide, and running back to Stewart street," and it appeared that the vendor owned sixty feet on the right hand side of S. Street, the description was too indefinite to prevent the operation of the statute of frauds.

(Argued November 7, 1887. Decided January 3, 1888.)

October Term, 1887, No. 24, W. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Appeal from a decree of the Common Pleas No. 1 of Allegheny County in equity. Affirmed.

Bill in equity wherein Albert W. Holthouse was complainant and George B. Rynd was defendant. The bill prayed for the specific performance of an agreement by the defendant to sell to the plaintiff a certain piece of land.

The case was referred to a master, Thomas Herriott, Esq., who reported as follows:

The bill asks the specific performance of an agreement of the defendant to sell to the plaintiff a certain lot of ground on Sheffield street, Allegheny, and alleges that on July 11, 1885, the defendant was the owner in fee of a certain lot of ground in the 5th ward of said city, beginning on the northward side of Sheffield street about 60 feet westward from Fulton street, and extending back northward preserving same width, 138 feet to Stewart street; that by an article of said date, July 11, 1885, the defendant sold to the plaintiff the eastern 20 feet of said lot; and that a few days thereafter the plaintiff, finding that a lot 20 feet wide would not be wide enough to allow him to put on it a house which he expected to move from another lot, he went

---

NOTE.—Specific performance will not be granted where contracts are not certain and definite. Ruff's Appeal, 117 Pa. 310, 11 Atl. 553; Daisz's Appeal, 128 Pa. 572, 18 Atl. 414; Weaver v. Shenk, 154 Pa. 206, 26 Atl. 811; Reilly v. Gautschi, 174 Pa. 80, 34 Atl. 576; Friend v. Lamb, 152 Pa. 529, 34 Am. St. Rep. 672, 25 Atl. 577.

to the defendant on July 20, 1885, and told him of the difficulty; and the defendant then sold him an additional foot in width along the western side of the lot first sold. The bill also alleges that the plaintiff, with defendant's consent, took possession of the whole 20 feet and made valuable improvements thereon, and that the plaintiff had tendered the price agreed on for the extra foot and the cash payment called for by the article of July 11, 1885.

The answer admits title in the defendant, but claims that the lot sold was not described as claimed in the bill, but was part of a lot 60 feet in width, which was wholly undivided. The answer claims that the agreement of July 11, 1885, was procured by fraud and deception; that one of the inducements for signing said agreement was the plaintiff's agreement to put a fine new house on the lot, which would enhance the value of the remaining property of the defendant; that as soon as the defendant learned that the plaintiff was moving an old house on this lot he renounced the agreement and tendered back the hand money paid him. The sale of the additional foot is denied.

The testimony shows that the defendant signed the agreement of July 11, 1885, by which he sold to the plaintiff a lot fronting 20 feet on the north side of Sheffield street running back to Stewart street, and that he did not own any lot of this size, but did own a lot on the north side of this street of the width of 60 feet.

The claim set forth in the answer that the defendant was young and ignorant and incapable in business matters, and that he was fraudulently induced to sign the agreement, is not supported by the evidence. The defendant lives with his father within a few miles of the city, and the plaintiff went to the father's house and talked with him there about buying this lot. The young man is allowed by his father and friends to manage his own business, and no one has been called to show that he is in any way unfit to do this wisely. The agreement was signed, according to the defendant's testimony, at the office of Mr. Wilson, the defendant's brother-in-law, in Allegheny city. If the plaintiff was perpetrating a fraud on the defendant, he would not choose the house of the defendant's father and the office of his brother-in-law to accomplish it.

The charge that the plaintiff agreed to build a new house costing at least $8,000 on the lot is denied by the plaintiff. The

defendant is not corroborated in his testimony, unless it be inferentially by the testimony of Mr. Wilson, who says that when plaintiff wanted to buy another foot he said the 20 feet was not wide enough, as his architect had the plans made out to build a house of a certain width and he could not do it on this lot. This occurred, however, some days after the signing of the agreement of July 11, 1885; and considering this fact, and how uncertain testimony as to what was said nearly two years before is, the master thinks the testimony is too nearly balanced to find such fraud on the part of the plaintiff—especially as he thinks there are two other reasons for which the bill must be dismissed. One of these is that the plaintiff cannot claim more than 20 feet in width, and that he has knowingly built his house from 4 to 7 inches over on defendant's ground; while thus a wilful trespasser he certainly cannot come into equity for the relief asked; the other reason for dismissing the bill is that the agreement of July 11, 1885, gives no description by which this lot could be identified; it might be any part of the lot owned by defendant which fronts 60 feet on this street.

To enable a party to enforce specific performance the agreement must contain every essential, *viz.,* the exact terms of the contract and a description of the property. Soles v. Hickman, 20 Pa. 180; Hammer v. McEldowney, 46 Pa. 334.

In this case the plaintiff claims that under the agreement of July 11, 1885, he went into possession and made improvements, and that the boundaries of the lot were agreed upon and fixed by a deed afterward executed by the defendant, which deed, however, was never delivered. The facts with regard to this deed are that about July 25, 1885, the defendant learned that the plaintiff was going to put an old house on this lot; and he at once objected, and in writing on that day notified the plaintiff not to take possession of the lot. At this time plaintiff claims that he had done considerable work on the foundation for his house, and had made contracts for moving the old house. No evidence was offered as to the contracts, and the weight of the evidence is that nothing had been done on the lot except to put up a small piece of fence. After this notice was given the parties attempted to settle their dispute by the defendant giving the plaintiff a deed for the 20 feet, and the plaintiff yielding his claim for the extra foot, and the papers were prepared by the plaintiff's attorneys. These were prepared between July

25, and August 1, 1885, but on account of the name of the plaintiff not being in full, the defendant's attorney objected, and accordingly had new papers prepared; and the parties and their respective attorneys met on August 1, 1885, to complete the settlement.

The plaintiff himself testifies that he agreed to this settlement to avoid litigation, and it was clearly an attempt to compromise the trouble between them. At this meeting the papers were not delivered, as a dispute arose about the amount the defendant was to pay the plaintiff's attorney for examining the title, and no settlement was effected. After this the plaintiff proceeded with the foundations for his house, and the defendant on August 5, 1885, filed a bill to restrain the plaintiff from proceeding, and August 10, 1885, was fixed for a hearing and notice thereof given to the plaintiff. After argument the court declined to issue a preliminary injunction. The plaintiff proceeded, and about the last of August, 1885, got the old house on the defendant's lot.

The master thinks that no improvements put on this lot by the plaintiff will avail him in this case. He was formally notified in writing, before he had done anything worth considering, not to proceed with his improvements, and in addition is notified by the bill in equity. Disregarding both notices he takes the chances and goes ahead. If he has made a serious mistake, he did it after notice at least twice repeated; and his rights must be decided as of July 25, 1885.

It is claimed for plaintiff, under the authority of Hart v. Carroll, 85 Pa. 508, and Troup v. Troup, 87 Pa. 149, that the making of the deed on August 1, 1885, and the possession and improvement of the lot will cure any defect in the agreement. Neither of these cases rules the present.

In Troup v. Troup the boundaries were allowed to be shown, but possession had been given and the boundary line designated by the parties and valuable improvements made. In this case the plaintiff and the defendant could not agree on the location of the lot, as the plaintiff claimed that the adjoining house was several inches over on defendant's lot, and this defendant denied; and, as shown, the improvements were all made after the plaintiff had notice.

Nor can the deed of August 1, 1885, help the plaintiff, even if it came within the rule of Hart v. Carroll, where the contract

was complete by reason of many years' possession and valuable improvements, and the deed was only to fix the boundaries, the same as any other admission of a party. The great objection to considering the deed in this case is that it was made in an attempt to compromise the differences of the parties, and therefore can neither help nor hurt either of them. Unless the agreement of July 11, 1885 (unaided by the deed of August 1, 1885, or any improvements made by the plaintiff) is sufficient to justify a decree for specific performance, the bill should be dismissed; and for the reasons above given the master recommends the dismissal of the bill—without prejudice, however, as to the plaintiff's claim for damages.

The agreement of July 11, 1885, was as follows:

Know all men by these presents, that I, George B. Rynd, of the first part, do agree to sell to A. W. Holthouse, of the second part, a lot on the right-hand side of Sheffield street going towards the river, being 20 feet wide, and running back to Stewart street, for the sum of $2,000, $1,000 down on the examination of deed, and $1,000 in one year with interest; the said George B. Rynd, of the first part, agrees to pay all the costs and examination of title and surveys, etc., and all taxes that are against said lot, the party of the second part does hereby pay the said party of the first part the sum of $20 on account of said lot.

George Rynd.

Allegheny, July 11, 1885.

The following exceptions to the master's report were filed:

The master erred in finding: (1) That the plaintiff is a wilful trespasser on from 4 to 7 inches of defendant's ground, and therefore is not entitled to a specific performance of the agreement for the sale of the 20 feet; (2) that the plaintiff is a wilful trespasser upon from 4 to 7 inches of defendant's ground; (3) that while the plaintiff was a wilful trespasser on from 4 to 7 inches of defendant's ground he could not come into equity for the relief asked; (4) that the agreement of July 11, 1885, gives no description by which this lot could be identified; (5) that the plaintiff had not made contracts for moving his old house and had not done considerable work on the foundation for his house on July 25, 1885, the time when the notice was served on him; (6) that "no improvements put on this lot by the

plaintiff will avail him in this case;" (7) that there ever was a dispute between the plaintiff and defendant as to the location of the lot described in the agreement of July 11, 1885, or assuming to find that such difference of opinion existed in order to justify the finding that the deed and mortgage filed with the testimony described a lot which was matter of compromise between the parties as to its descriptions; (8) that the deed and mortgage of August 1, 1885, was made in an attempt to compromise the difference of the parties and therefore can neither help nor hurt either of them; (9) that the agreement of July 11, 1885, was not sufficient in itself to enable the plaintiff to maintain this action; and (10) that "unless the agreement of July 11, 1885, unaided by the deed of August 1, 1885, or any improvements made by the plaintiff is sufficient to justify a decree for specific performance, the bill should be dismissed."

The court dismissed the exceptions and entered a decree dismissing the bill, without prejudice to the rights of the plaintiff to institute an action at law for damages.

The assignments of error specified: (1–10) The action of the court in dismissing the exceptions to the master's report; and (11, 12) the dismissal of the plaintiff's bill and refusal to decree specific performance.

*S. U. Trent* and *John G. Bryant,* for appellant.—The sale, as shown by defendant's answer, the deed and mortgage executed, and all the evidence on either side, was of "a lot 20 feet wide off the eastern end of the defendant's said land." The exact location of defendant's east line, if there was any question about it, could have been determined by a survey, for which the agreement provided. A deed not delivered is evidence of a designation of lines. Hart v. Carroll, 85 Pa. 508.

As to the effect of the statute of frauds: "Whether the description answers the requirement of the statute is a question which occurs on the face of the papers, and is naturally preliminary to the introduction of testimony to connect the contract with the property; and the decision of it would regularly seem to be required on an inspection of the documents, and before the arrival of opportunity for any conflict of the kind referred to." 1 Reed, Stat. Fr. § 408.

Words of description in a contract for conveyance or deed are

presumed to relate to an estate owned by the vendor or grantor, and the words "a house and lot," are as definite and precise as the words "my house and lot" would be.    Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671; Scanlan v. Geddes, 112 Mass. 15; Mead v. Parker, 115 Mass. 413, 15 Am. Rep. 110.

No greater certainty of description is required in a memorandum of sale of real estate than in a memorandum of sale of personalty, where a memorandum is required by statute (Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671); or in a will (Shardlow v. Cotterill, 51 L. J. Ch. N. S. 353); and if a memorandum of sale of a horse, or a devise of a lot be good, when applied to the subject by extrinsic evidence, so is a memorandum of sale of a lot.

Any two specific terms applying to the subject-matter form a sufficient description.    Shardlow v. Cotterill, 51 L. J. Ch. N. S. 353; Ogilvie v. Foljambe, 3 Meriv. 52; Owen v. Thomas, 3 Myl. & K. 353; Bleakley v. Smith, 11 Sim. 149; Evans v. Prothero, 21 L. J. Ch. N. S. 772, 13 Eng. L. & Eq. Rep. 163; Ross v. Baker, 72 Pa. 186; M'Murray v. Spicer, 37 L. J. Ch. N. S. 505; Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671; Scanlan v. Geddes, 112 Mass. 15; and Mead v. Parker, 115 Mass. 413, 15 Am. Rep. 110; Slater v. Smith, 117 Mass. 96; Connell v. Mulligan, 13 Smedes & M. 388; Ross v. Baker, 72 Pa. 186; Soles v. Hickman, 20 Pa. 180; Hammer v. McEldowney, 46 Pa. 334.

The memorandum in question shows an agreement to sell a lot of certain width, abutting on certain streets.    The fair inference is that it was to be designated by the vendor or selected by the vendee, if they failed to agree respecting its location.    The selection by the vendee and the acquiescence of the vendor have in this case fixed the location.    Such agreements are enforceable, and the selection or designation may be shown by extrinsic evidence.    Carpenter v. Lockhart, 1 Ind. 434; Ellis v. Burden, 1 Ala. 458; Washburn v. Fletcher, 42 Wis. 152; Simpson v. Breckenridge, 32 Pa. 287.

But even if the memorandum of July 11 be insufficient, standing alone, the notice of July 25, and the deed executed but not delivered, or one of them, should be read in connection with it; and together they constitute a sufficient writing under the statute.

Several writings, although executed at different times, may

be construed together for the purpose of taking a case out of the statute and the connection or relation of the papers, if all signed, may be shown by extrinsic evidence.    Thayer v. Luce, 22 Ohio St. 62; Jenkins v. Harrison, 66 Ala. 345; Beckwith v. Talbot, 95 U. S. 289, 24 L. ed. 496.

A deed signed by the vendor and approved by the vendee, although not delivered, is to be read in connection with a prior defective memorandum of the sale, even if containing no reference to it; and if together they show the terms and subject of the sale, the case will be taken out of the statute.    Tripp v. Bishop, 56 Pa. 424; Thayer v. Luce, 22 Ohio St. 62; and Jenkins v. Harrison, 66 Ala. 345.

A deed executed in pursuance of an oral contract of sale, although never delivered, will take the case out of the statute, if approved by the vendee.    Bowles v. Woodson, 6 Gratt. 78; Parrill v. McKinley, 9 Gratt. 1, 58 Am. Dec. 212; Blacknall v. Parish, 59 N. C. (6 Jones Eq.) 70, 78 Am. Dec. 239.

*M. A. Woodward*, for appellee.—If the plaintiff (intentionally or unintentionally) made any misrepresentation, or in any way misled the defendant, about any matter concerning the transaction, which misrepresentation or misleading would have weight towards gaining the defendant's consent, and therefore may have gained such consent; or when, after the contract is made, the plaintiff has done anything to prejudice the relations and equities of the parties respecting the subject-matter, then specific performance will be refused.

If, in view of all the circumstances, it would be inequitable to decree specific performance, the court will refuse to do so. Fisher v. Worrall, 5 Watts & S. 478; Huntington v. Rogers, 9 Ohio St. 511.

Specific performance will not be decreed where there is a strong doubt whether the parties understood the contract alike. Coles v. Bowne, 10 Paige, 526; Pendleton v. Dalton, 62 N. C. (Phill. Eq.) 119; Cuff v. Dorland, 50 Barb. 438; Trigg v. Read, 5 Humph. 529, 42 Am. Dec. 447; Greer v. Boone, 5 B. Mon. 554.

Equity will not decree specific performance of a contract, where it appears not to have been entered into with perfect fairness, although there was not ground to authorize the court to cancel the agreement.    Frisby v. Ballance, 5 Ill. 287, 39 Am.

Dec. 409; Tarr v. Glading, 1 Phila. 370; King v. Hamilton, 4 Pet. 311, 7 L. ed. 869, 1 N. J. Eq. 330, 9 N. J. Eq. 332, 1 Clark (N. Y.) 400, 12 Wis. 382, Wright (Ohio), 105, 28 Ala. 432; Clitherall v. Ogilvie, 1 Desauss, 250; Backus's Appeal, 58 Pa. 186; Canterbury Aqueduct Co. v. Ensworth, 22 Conn. 608.

As to sufficiency of the writing, Judge KING, in the very able and exhaustive opinion in the case of Parrish v. Koons, 1 Pars. Sel. Eq. Cas. 79, says: "Unless the essential terms of the bargain and sale can be ascertained from the writing itself, or by a reference, contained in it, to something else, the writing is not a compliance with the statute. . . . Specific execution of a contract will not be enforced unless parties have described and identified the particular tract, or unless the contract furnishes the means of identifying, with certainty, the land to be conveyed." Patton v. Develin, 2 Phila. 103. See also Reed, Stat. Fr. p. 708, § 408.

PER CURIAM:

The agreement of the 11th of July, 1885, was entirely too indefinite to prevent the operation of the statute of frauds and perjuries; and the plaintiff's bargain for the additional 1 foot of ground was purely oral, and, according to his own testimony, was never fully concluded. This condition of the evidence leaves us nothing to do but affirm the decree of the common pleas.

The appeal is dismissed and the decree affirmed, at the costs of appellant.

