# The Safe Deposit & Trust Company of Pittsburg v. Diamond Coal & Coke Company, Appellant.

*Equity—Jurisdiction—Specific performance—Vendor and vendee— Contract for sale of land—Written contract varied by parol—Fraud— Statute of frauds.*

1. The Act of April 22, 1856, P. L. 532, 2 Purd. 1757, known as the statute of frauds, is not a mere rule of evidence, but a limitation of judicial authority to afford a remedy.

2. Under this statute, a contract for the sale of land must be in writing and both the consideration and the subject of the agreement must be definitely defined. The land must be described in the agreement or by reference to a plan or other matter so that it can be identified and located, and the description must be sufficiently definite within itself and not require the aid of parol testimony or be left to the future action of the same or other parties.

3. Where a written executory contract for the sale of land is reformed by parol evidence on the ground of fraud, accident or mistake, the whole contract is, in contemplation of law, reduced to a parol agreement which the statute of frauds declares to be void, and, where there is no estoppel, incapable of being specifically enforced so as to compel the transfer of title to real estate.

*Equity—Fraud, accident or mistake—Contracts—Reforming written contracts—Parol testimony.*

4. Wherever a written instrument fails to express the intention of the parties by reason of fraud, accident or mistake the injured party may invoke the equitable jurisdiction of the court which, by the aid of parol testimony, may reform it; but the court cannot, if the reformed instrument involves a contract for the sale of real estate, specifically enforce it.

Argued Oct. 19, 1911. Appeal, No. 118, Oct. T., 1911, by defendant, from decree of C. P. No. 3, Allegheny Co., Nov. T., 1909, No. 486, in equity sustaining demurrer to cross bill in The Safe Deposit & Trust Company of Pittsburg v. Diamond Coal & Coke Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Cross bill in equity for the reformation of a written agreement for the sale of coal, and for the specific performance of the agreement as reformed. Before DAVIS, J.

The Midland Steel Company is the owner of about 903 acres of the Pittsburg or River vein of coal in Washington county adjoining a tract of the same vein of coal owned by the Diamond Coal & Coke Company. On December 2, 1905, the steel company executed and delivered to the Safe Deposit & Trust Company of Pittsburg as trustee, a first mortgage on its coal to secure the payment of a bond issue. The trustee accepted the trust set forth in the mortgage and has since continued to act as such trustee. The entries in the mine of the coal company were in close proximity to the coal of the steel company and the former having threatened to extend its entries into and mine the latter's coal, the trustee, in October, 1909, filed a bill to restrain the coal company from entering upon, mining or

in anywise interfering with the body of coal covered by the mortgage. The coal company demurred to the bill but the demurrer was overruled and the company required to answer. An answer and replication having been filed, the court, after hearing, dissolved the preliminary injunction, but retained the bill in place "that compliance with the terms of this agreement may be enforced, in case there should be a default on the part of the Diamond Coal & Coke Company." The agreement referred to in the decree was a contract, dated December 12, 1908, by which the steel company sold to the coal company 200 acres of its coal, the part of the agreement material to this issue being the description of the coal land sold as follows: "The precise bounds of the coal land, proposed to be sold, cannot be exactly stated, but will be substantially as follows: The same is to be the Pittsburg or River vein of coal, underlying one contiguous block of 200 acres to be carved out of said larger tract, bounded on the East by the line between the Vesta Coal Company and the Steel Company extending from the point of intersection of the lands of the Coal Company, the Vesta Coal Company and the Steel Company at least to the point of intersection of lands of Williams and Dorsey now owned by the Steel Company and the Vesta Coal Company with the privilege of the Steel Company extending the line to any portion of the Williams farm; bounded on the North by the line of the lands of the Coal Company at least the full length thereof, with the right of the Steel Company to extend said line along the line of the lands of the Lilley Coal so far as in its discretion it may determine. The Western boundary of said tract shall be the boundary line as decided upon between the Steel Company and the land of the Monongahela River Consolidated Coal & Coke Company as determined by a proposed trade arrangement between the Steel Company and the Monongahela River Consolidated Coal & Coke Company, and bounded on the South by a straight line so determined in consideration of the other boundaries that the tract shall contain 200 acres.

A description of the precise boundaries of the coal land, sold, to be defined as above by the Steel Company, shall be by the Steel Company furnished to the Coal Company in writing at least ten days prior to the delivery of the deed hereinafter mentioned."

Upon the dissolution of the injunction the steel company presented its petition to the court for leave to intervene and to become a party to the proceedings instituted by the trust company and to file a cross bill against the coal company and trustee. The coal company filed an answer denying the right of the steel company to intervene and become a party by filing a cross bill, and praying that the petition be dismissed. The court, however, granted the prayer of the petition, permitted the steel company to intervene and file its cross bill which prayed for an injunction to restrain the coal company from mining the coal, and for the surrender and cancellation of the agreement between the steel and coal companies for the sale of the 200 acres of coal sold.

The steel company having thus become a party to the proceedings, the coal company filed the present cross bill against the latter company and the trustee, averring, inter alia, as follows: "Ninth. That prior to the consummation of said agreement the defendant, the Midland Steel Company, through its representatives, exhibited to the officers and agents of this cross-plaintiff a general map showing its coal property at this point, and thereupon marked and designated the coal agreed to be conveyed and more particularly showed on said map the Western boundary of said tract, fraudulently misrepresenting to the agents of this cross-plaintiff that the Western boundary line as designated and pointed out on said map was substantially the boundary line decided upon between the Steel Company and the land of the Monongahela River Consolidated Coal & Coke Company as determined by the proposed trade arrangement and that while it might be required to move said line a few feet one way or the other, that said line would be substantially as directed and

pointed out at that time; that this cross-plaintiff . . . .
accepted said designation and description of the Western
boundary line, and in the preparation of the agreement
between the parties the said boundary line was so desig-
nated and described; that this cross-plaintiff . . . . avers
that the said line as designated and pointed out to them by
the representatives of the Midland Steel Company, the
defendant, did not constitute substantially the boundary
line as decided between the Steel Company and the land
of the Monongahela River Consolidated Coal & Coke
Company, as determined by said proposed trade ar-
rangement, and that a line entirely different from this
one was the one proposed by the Monongahela River Con-
solidated Coal & Coke Company, and the line pointed out
by the officers of the defendant company did not consti-
tute the line substantially decided upon; that this cross-
plaintiff, relying upon the fraudulent misrepresentations of
the defendant, the Midland Steel Company, representa-
tions which were entirely within the knowledge and posses-
sion of the said defendant, the Midland Steel Company,
entered into said agreement . . . .; that a true and correct
boundary line of said property as designated and pointed
out to this cross-plaintiff and said to have been the bound-
ary line in the proposed trade arrangement is the exten-
sion or continuation in the Southerly direction of the
Western boundary line of Lilley Coal which immediately
joins the coal of the Midland Steel Company at this
point." The bill prayed, inter alia, as follows: "1st. That
said tract be reformed in its description so that the de-
scription of the Western boundary line of said property
which reads as follows: 'The Western boundary of said
tract shall be the boundary line as decided upon between
the Steel Company and the land of the Monongahela
River Consolidated Coal & Coke Company, as determined
by a proposed trade arrangement between the Steel Com-
pany and the Monongahela River Consolidated Coal &
Coke Company'—shall be modified, reformed and changed
so that the same shall read—'The Western boundary of

said tract shall be a line constituting an extension or continuation in the same Southerly direction as the Western boundary line of the Lilley Coal which immediately adjoins the coal of the Midland Steel Company, said line to be continued in such length so that the straight line fixed in this agreement as the Southerly line taken with this Westerly line shall close and the entire area constitute 200 acres.'" The bill further prayed that the steel company be directed to furnish a description of the precise bounds of the coal lands sold, to be defined as contained in the contract, that the court decree the specific performance of the contract and thereafter the steel company deliver to the coal company a deed in fee simple for the coal as substantially described in the agreement upon delivery by the coal company of the consideration money stipulated in the agreement, and that the trustee be directed to release from the lien of the mortgage held by it the 200 acres of coal described in the agreement. The steel company and the trustee demurred to this cross bill on the grounds, inter alia, that (1) "the bill shows that the efficacy as a contract of the so-called agreement is inherently dependent on the consummation of the proposed trade agreement between the Steel Company and the Monongahela River Consolidated Coal & Coke Company, but fails to allege that said trade was ever made;" and (2) "the allegations of the bill show that under the Pennsylvania Statute of Frauds the plaintiff is not entitled to the prayer for reformation and specific performance." After hearing, the court entered a decree sustaining the demurrer and dismissing the bill. From the decree the coal company has taken this appeal.

*Error assigned* was in sustaining demurrer and dismissing the cross bill.

*William A. Stone,* with him *Stephen Stone,* for appellant.

*M. W. Acheson, Jr.,* of *Patterson, Sterrett and Acheson,* for appellees.—Even if the memorandum were enforceable

nevertheless since it is executory, parol evidence, even of a fraud, while admissible to strike the paper down, would be inadmissible to vary it and then enforce it, because this would violate the statute of frauds: McCann v. Pickup, 17 Phila. 56; Glass v. Hulbert, 102 Mass. 24; Andrews Brothers Company v. Coke Co., 39 Fed. Repr. 353; Workman v. Guthrie, 29 Pa. 495; Davis v. Ely, 104 N. C. 16 (10 S. E. Repr. 138); Elder v. Elder, 10 Me. 80; Osborn v. Phelps, 19 Conn. 63; Macomber v. Peckham, 16 R. I. 485 (17 Atl. Repr. 910); Climer v. Hovey, 15 Mich. 18; Dyer's App., 107 Pa. 446; Lord's App., 105 Pa. 451.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

This is a cross bill in which the Diamond Coal & Coke Company (herein called the coal company) is plaintiff, and the Midland Steel Company (herein called the steel company) and the Safe Deposit & Trust Company, trustee (herein called the trustee), are defendants. The plaintiff seeks to reform by parol an executory contract in writing for the sale of coal lands, and prays for a decree of specific performance of the contract as reformed. The facts and the proceedings leading up to the filing of the cross bill are stated by the reporter. The part of the contract sought to be reformed is the description of the coal lands sold by the steel company to the coal company, the cross-plaintiff.

Analyzing the written contract between the parties we find that the agreement is a proposition to sell 200 acres of coal the precise boundaries of which could not then be exactly stated, but the description of the boundaries was to be substantially as stated. The eastern boundary line is stated with the privilege of the steel company to extend it, and the northern boundary line was to be the line of the lands of the coal company, at least the full length thereof, with the right of the steel company, in its discretion, to extend the line along the line of the Lilley coal. The western boundary of the tract "shall be the boundary line as decided upon between the Steel Company and the

land of the Monongahela River Consolidated Coal & Coke Company," and the southern boundary was to be a straight line determined in consideration of the other boundaries so that the tract should contain 200 acres.

If there is any more uncertain and indefinite description of lands, agreed to be sold and purchased, in any case in this court, it has escaped observation. There is neither course nor distance given to any of the four boundary lines. In fact the memorandum of agreement distinctly states that at the date of its execution the precise boundary lines "cannot be exactly stated." The only thing definitely stated in the memorandum is the number of acres to be sold. The vendor company owned 903 acres of coal and out of that body it proposed to sell 200 acres to the coal company. There is not one of the boundary lines, as will be observed, that is definitely described. The length of the east and north lines is not fixed but depends upon the discretion of the vendor, the western line "shall be the boundary line as decided upon between the Steel Company and land of the Monongahela River Consolidated Coal & Coke Company as determined by a proposed trade arrangement between the Steel Company and the Monongahela River Consolidated Coal & Coke Company," which leaves the line undetermined until the boundary line has been fixed by the proposed trade arrangement, and the southern line is not given but is to be "determined in consideration of the other boundaries." It is not averred in the bill, and hence must be assumed not to be a fact, that the proposed trade arrangement has yet been consummated and the boundary line therein provided for has been determined. It is apparent that without this line neither the north nor the west line of the coal lands sold can be ascertained. It is not alleged that the coal company took possession of any definitely described tract of 200 acres, or in fact, of any coal land in pursuance of the sale, or made any improvements thereon. Neither these nor any other matters of estoppel, except the payment of $5,000 on the $300,000 consideration, are averred

in the bill.   It follows that by reason of the defective
description of the lands, the contract of sale is indefinite,
uncertain, and not self-sustaining, and is therefore void
and not enforceable under the statute of frauds.

The Act of April 22, 1856, P. L. 532, 2 Purd. 1757, known
as the statute of frauds, provides in its fourth section that
"all declarations . . . . of any lands, . . . . and all
grants and assignments thereof shall be manifested by
writing, . . . . or else to be void." Without this statute,
an agreement either in writing or by parol to sell lands
is not valid unless its terms are sufficiently definite to iden-
tify the subject of the sale.   Under the statute, the land
must not only be sufficiently described to identify it, but
the contract must be in writing or it is void and not en-
forceable.   The statute requires both the consideration
and the subject of the agreement to be definitely defined.
The land must be described in the agreement or by refer-
ence to a plan or other matter so that it can be identified
and located, and the description must be sufficiently defi-
nite within itself and not require the aid of parol testimony
or be left to the future action of the same or other parties:
Holthouse v. Rynd, 9 Sadler, 193; McCoy v. Brunot, 183
Pa. 105; Soles v. Hickman, 20 Pa. 180; Cunningham v.
Neeld, 198 Pa. 41; Agnew v. Southern Avenue Land Com-
pany, 204 Pa. 192, and Baldridge v. George, 216 Pa. 231.

It is apparent that the contract as written cannot be
specifically performed, and it is equally clear that no es-
sential part of it can be supplied or reformed by parol
testimony and, as thus varied or changed, be specifically
enforced against the vendor.   If the written agreement
lacks any of the essentials necessary to make it a complete
contract, the statute declares it void: Mellon v. Davison,
123 Pa. 298.   The vendee corporation, recognizing the
invalidity of the agreement as written and its inability to
enforce specific performance of it, seeks by its cross bill
to reform the contract by parol, and then to have the
contract as thus rectified  specifically carried out by the
vendor.   The ground on which the reformation is sought

is fraud which, as set out in the ninth paragraph of the bill, is averred to consist in the steel company, prior to the consummation of the agreement, exhibiting to the coal company a map showing the steel company's property and designating thereon the coal agreed to be conveyed and the western boundary of the tract, and fraudulently misrepresenting that such boundary line was substantially the line decided upon as determined by the proposed trade arrangement with the Monongahela company, by reason of which representations, the coal company accepted said designation and description in the contract as the western boundary line. We have possibly gone as far as any American state in admitting oral testimony to vary and contradict written instruments. We have uniformly held that parol evidence is competent to vary or contradict a writing where there was fraud, accident or mistake in the creation of the instrument itself, or where there has been an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed and without which it would not have been executed. In such cases where the parol evidence is sufficient to warrant a chancellor in reforming the instrument it is admissible to contradict or vary the writing. Wherever the oral evidence furnishes this degree of proof our courts in the exercise of equitable jurisdiction have reformed the writing so as to make it conform to the intention of the parties in the execution of the instrument. We have applied this doctrine, and permitted parol testimony to be introduced for the purpose of reforming both executory and executed contracts. Wherever a written instrument fails to express the intention of the parties by reason of fraud, accident or mistake the injured party may invoke the equitable jurisdiction of the court which, by the aid of parol testmony, may reform it. This is the well-settled doctrine of our state as has frequently been declared by this court. No party can, in morals or in law, insist upon the performance of a written agreement which by

reason of fraud, accident or mistake does not speak the intention of the parties, and a chancellor will reform the instrument so as to make it declare their real intention. Equity looks alone to justice and fair dealing, and will command even the law, hampered by its technicalities, to obey her decree enforcing the true intention of the parties to a contract.

While, therefore, the admissibility of parol evidence, under proper limitations, to alter, vary and even to contradict a written instrument in such cases is settled in this state, it has not yet been determined by this court that the instrument having been varied or rectified by the evidence, the court may decree specific performance of the agreement in its varied or corrected form where the contract is required by statute to be in writing. It is one thing to alter or vary a written contract by parol evidence, and quite another to specifically enforce it in its varied or altered form. In the absence of fraud, accident or mistake a written contract speaks for itself, and parol evidence will not be received to vary or contradict it. The rule that a written contract cannot be altered or contradicted by parol evidence is, however, relaxed, and the courts the intention of the parties by reason of fraud, accident or mistake, but will rectify the contract so as to declare their real intention. In the absence of statutory inhibition a chancellor will, where there is no adequate remedy at law, compel a party to keep his written engagements. That is one of the settled powers of a court of equity. It simply involves the application of the exception to the general rule that parol evidence is not admissible to vary or contradict a written instrument.

Where, however, the people speaking through the legislative branch of the government, have declared that contracts relating to certain subjects shall possess certain requisites necessary to their validity, it is not within the power or the jurisdiction of a court of equity to annul or disregard the mandate. Equity corrects that wherein the law is deficient, but where the statutory law has

spoken equity must remain silent. A chancellor cannot by his decree repeal or set at naught an act of assembly constitutionally valid. To uphold such a power or to enforce such a doctrine is in the very teeth of the proposition that "all power is inherent in the people." Where the federal or state constitution imposes no prohibition, the legislature may declare the manner in which or the instrument by which lands in the state shall be sold and transferred, and the courts have no discretion in the enforcement of the statutory provision. We are clear that upon reason and authority a court of equity cannot vary or rectify by parol an executory agreement in writing for the sale of lands and as thus varied, in the absence of an estoppel, specifically enforce performance of it. It is the doctrine of this court, declared in numerous cases, that where a written agreement is varied by oral testimony the whole contract in legal contemplation becomes parol. If there is anything settled in our law that principle is firmly established. When therefore a party to an executory agreement in writing for the sale of lands succeeds in reforming it by oral testimony he reduces the whole agreement to a parol contract, and deprives himself of the right to have it specifically performed. He pulls down the house on his own head. When he converts the writing into an oral agreement, the statute declares it to "be void." He has rectified the written contract and in its place has established an agreement which in contemplation of law is parol and therefore, by statutory mandate, absolutely invalid and without force. The true contract, as declared by the chancellor, cannot be enforced. "It is then apparent," says Judge Hare, 2 Wh. & Tudor's Lead. Cas. in Eq. (4th Am. ed.) 994, "that the contract as it stands is not the true one, and that the true contract is invalidated by the statute, and as the former ought not to be, and the latter cannot be enforced, there is no room for a decree of specific performance." Our statute of frauds declares that all grants and assignments of land shall be manifested by writing "or else to be void," and un-

der this statute, therefore, a parol contract for the sale of land is a nullity and no court can decree its specific performance. It is equally apparent that this rule applies whether the contract originally was oral, or whether it becomes so by the decree of a chancellor reforming the written agreement and thereby reducing the whole contract to parol. Equity strikes down the written agreement and substitutes the parol contract as expressive of the intention of the parties. In either case the statute declares the agreement void, and it is not within the power of a chancellor to rehabilitate and make it a valid instrument for the conveyance of land. Whether a written contract is reformed on the ground of fraud, accident or mistake, the effect is the same, the whole contract is, in contemplation of law, reduced to a parol agreement which the statute of frauds declares to be void and incapable of being specifically enforced so as to compel the transfer of title to real estate. The statute is not a mere rule of evidence, but a limitation of judicial authority to afford a remedy: Glass v. Hulbert (Mass.), 3 Am. Rep. 418, 423.

The above conclusion is in accord with the English doctrine as announced in the leading case of Woollam v. Hearn, 7 Ves., Jr., 211, decided in 1802. The case has been followed in subsequent decisions and is the present law of England. The leading American case in support of this view is Glass v. Hulbert, 102 Mass. 24, 3 Am. Rep. 418. The bill was filed by the vendee against the vendor and asked relief in several particulars connected with the alleged oral contract of purchase. In dismissing the bill Mr. Justice WELLS delivered an exhaustive opinion reviewing all the authorities on the subject in which he said inter alia: "When the proposed reformation of an instrument involves the specific performance of an oral agreement within the statute of frauds; or when the term sought to be added would so modify the instrument as to make it operate to convey an interest or secure a right which can only be conveyed or secured through an instrument in writing, and for which no writing has ever existed, the

statute of frauds is a sufficient answer to such a proceeding, unless the plea of the statute can be met by some ground of estoppel, to deprive the party of the right to set up that defense. . . . Rectification by making the contract include obligations or subject-matter, to which its written terms will not apply, is a direct enforcement of the oral agreement, as much in conflict with the statute of frauds as if there were no writing at all." The same doctrine is announced and enforced in Elder v. Elder, 10 Me. 80, 25 Am. Dec. 205; Osborn v. Phelps, 19 Conn. 63, 48 Am. Dec. 133; Macomber v. Peckham, 16 R. I. 485; Climer v. Hovey, 15 Mich. 18; Davis v. Ely, 104 N. C. 16, 17 Am. St. 667; Westbrook v. Harbeson, 2 McCord Ch. (S. C.) 112; Bogard v. Barhan, 52 Ore. 121, 132 Am. St. 676; Alabama Mineral Land Company v. Jackson, 121 Ala. 172, 77 Am. St. 46; Miller v. Chetwood, 2 N. J. Eq. 199; Webster v. Gray, 37 Mich. 37; Dennis v. Dennis, 4 Rich. Eq. (S. C.) 307; Allen v. Kitchen, 16 Ida. 133, 100 Pac. Repr. 1052.

In Adams on Equity (5th Am. ed.), 171, the learned author says: "Where land is the subject of the erroneous instrument, the reformation of an executed conveyance on parol evidence is not precluded by the statute of frauds, for otherwise it would be impossible to give relief. And where a mistake in an executory agreement relating to land is alleged, parol evidence may be admitted in opposition to the equity for specific performance. But it does not appear, that where the defendant has insisted on the benefit of a statute, the court has ever reformed such an executory agreement on parol evidence, and specifically enforced it with the variation."

The authorities cited by the learned counsel for the appellants do not rule the question raised by this record. Those decisions deal with executed contracts and with the admissibility of parol evidence to reform contracts in cases where, as said by WOODWARD, J., in Workman v. Guthrie, 29 Pa. 495, 510, "the statute of frauds and perjuries has nothing to do with the question," and, as said in Schettiger v. Hopple, 3 Gr. (Pa.) 54, 56, "where no

statutory provision intervened." While dicta in some of the opinions might apparently support the appellant's contention, the decision of the case did not require the court to pass upon the question involved in the present case. On the other hand, Judge BIDDLE, in McCann v. Pickup, 17 Phila. 56, a bill filed to correct the description in an agreement in writing for the exchange of certain real estate, followed the English and Massachusetts rule and refused to decree specific performance of the contract on parol evidence. In his opinion he said (p. 57): "But when the omitted term or obligation is within the statute of frauds, there is no valid agreement which the court is authorized to enforce outside of the writing." The same doctrine is recognized in Andrews Brothers Company v. Youngstown Coke Company, Limited, 7 Pa. C. C. Rep. 67, by the circuit court of the United States for the western district of Pennsylvania. Judge HARE also sustains the doctrine in his elaborate note to Woollam v. Hearn, 2 Wh. & Tudor's Lead. Cas. in Eq. (4th Am. ed.) 920, 944, in which he exhaustively reviews all the English and American cases on the subject to that date.

There is a conflict of authority on this side of the Atlantic on the question of the right of a court of equity, in the absence of part performance or other matters of estoppel, to reform by parol evidence an executory contract for the sale of land and specifically enforce it with the variation. In several states, courts of great respectability have held that a parol variation of the written agreement may be specifically enforced notwithstanding the statute of frauds. The leading case relied upon by those who support that doctrine is Gillespie v. Moon, 2 Johns. Ch. 585. That was a bill to reform, not an executory contract, but a deed which, it was alleged, by mutual mistake, included more land than was sold. The question under consideration here did not arise in that case, and hence what was said on the authority of the court to enforce a written contract with a parol variation for the sale of land must be regarded as dicta. In commenting on the doctrine announced in

Gillespie v. Moon and analogous cases, the court in Elder v. Elder, 10 Me. 80, holding the opposite view, says: "In all these cases there was written evidence to amend by, either resulting from the plain intention of the parties, although defectively expressed, or from previous instructions, or subsequent declarations in writing." The subject is ably and elaborately discussed in Macomber v. Peckham, 16 R. I. 485, and the court denies the power to enforce a written contract with a parol variation for the sale of lands, and says that the arguments used in support of the rule "seem to have been directed against the doctrine of English chancery courts, which, as we have seen, is applied to all written contracts, whether within the statute or not, and it does not appear that in making them, they gave thought to the distinction created by the statute."

For the reasons stated, we are of opinion that in the absence of an estoppel, the court cannot reform a written contract for the sale of land and specifically enforce the agreement with the variation, and that therefore the court below was right in dismissing the plaintiff's cross bill.

The decree is affirmed.