JOHN F. DAVIS v. TIMOTHY ELY et al.

*Reformation—Contracts, Executed and Executory--Rescission— Specific Performance—Statute of Frauds.*

1. An *executory* contract for the sale of land will not be reformed,'by enlarging the subject matter upon parol testimony, upon the ground of fraud, and enforced with the variation; but it may be *rescinded* upon such ground.

2. *Quære*, whether such reformation will be made even where the subject matter is not enlarged.

3. Parol testimony may, however, be received to show such matters in *defence* of an action for specific performance.

4. *Executed* contracts may, in proper cases, be corrected, either by enlarging or restricting the subject matter.

This was a CIVIL ACTION which was tried before *Boykin, J.,* at Spring Term, 1889, of the Superior Court of PASQUOTANK County.

The complaint was as follows:

1. That, on the 22d day of April, 1884, the plaintiff and defendants entered into a contract with regard to the sale and division of the Great Park estate; that a paper-writing purporting to contain the terms of said contract, was executed by Timothy Ely and wife Hannah, by their duly

authorized agent, Harvey Terry, and by the plaintiff, through his agent, Wm. J. Griffin. A copy of this writing is hereto attached, marked exhibit " A," and is made a part of this complaint.

2. That the recitals and agreements set forth in said contract, down to section numbered 4, are all true.

3. That the agreement which was intended to be embodied in the contract, of which the exhibit hereto attached is a copy, was made by Francis Davis, Esq., father of the said John F. Davis, and Harvey Terry, agent of Timothy Ely and wife Hannah.

4. That, before the contract could be reduced to writing, the said Francis Davis left Elizabeth City for his home in Ohio, and directed one W. J. Griffin, an attorney-at-law, to draft said contract and have the same executed and recorded.

5. That the said draftsman was compelled to rely upon statements of the said Terry, and, by false and fraudulent representations by said Terry, the said contract, or that portion set forth in the paragraph numbered 4 of the exhibit, hereto attached, does not set forth the true terms agreed on.

6. That the Great Park estate was incumbered by a mortgage, which had been purchased by Timothy Ely, and the equity of redemption was held by a firm known as Conrow, Bush & Lippincott; that the said John F. Davis had entered into a contract with the said Conrow, Bush & Lippincott for the purchase of their interest in the Great Park estate, except a portion known as the Hall tract, and the said Davis bound himself to pay off and discharge the mortgage, which was then held by the plaintiff Ely, and thereby leave the Hall tract to Conrow, Bush & Lippincott unincumbered. This contract of Davis with Conrow, Bush and Lippincott was well known to Harvey Terry, the agent of the defendant Ely.

7. That the said Terry, as agent of the said Timothy Ely, had obtained a judgment of foreclosure on his mortgage,

104—2

and the sale of the great Park estate was advertised to take place April 22, 1884. That, after the advertisement had been posted, the said John F. Davis applied for and obtained a restraining order, commanding the commissioners to desist from the sale of the Great Park estate, until a certain time mentioned in said restraining order.

8. That the said Francis Davis and Timothy Ely and Harvey Terry met in Elizabeth City on the 21st day of April, 1884, and on that day verbally made a contract which was intended to be embodied in the contract hereinbefore set out. It was only when the said Davis and Terry had thus come to terms, that the said Davis consented to the sale mentioned in said contract.

9. That the said Francis Davis, as agent for his son John F. Davis, refused to treat with the said Terry upon any basis except that the Hall tract should be given or set apart to his son John F. Davis, in order that the said John F. Davis might perform his contract with the said Conrow, Bush & Lippincott.

10. That, after much talking, it was finally agreed that the said Hall tract should be excepted, and the balance of the Great Park estate should be divided into two parts, equal in area, by a line running north and south, and the western half thereof should be given or allotted to John F. Davis, and the eastern half to Timothy Ely, and, in addition to the western half, the said Davis should have the portion known as the Hall tract.

11. That the said Terry represented unto the said Davis that the said Hall tract contains but 1,300 acres, which the said Terry well knew to be false. In truth and in fact, this complainant has been informed that the said Hall tract contains 3,000 acres.

12. That, having confidence in the integrity of said Terry, and having urgent business engagements in Ohio, the said Francis Davis left Elizabeth City on the 22d day of April,

1884, and this plaintiff did not learn of the error in the agreement for some time thereafter, and instituted suit as soon as he heard thereof.

Wherefore, plaintiff prays —

1. That the said contract may be reformed, so as to speak the true agreement of the parties as herein set out.

2. That the defendants be decreed to pay all costs of this proceeding; and

3. For such other and further relief as to the Court may seem meet.

The answer fully denied all of the allegations imputing fraud, and the following issues were submitted, without objection, to the jury:

1. Does the written contract dated April 22, 1884, contain the true agreement entered into between the parties?

2. Was it the agreement between the parties that John F. Davis should have the Hall tract, and one-half of the balance of the Great Park estate, and the defendants the other half of the Great Park estate?

3. Was the reservation of the Hall tract to J. F. Davis, omitted from the written contract by reason of the false and fraudulent representations made to the draftsman by the defendants, or either of them?

The issues show the true contention of the parties. The plaintiffs offered evidence tending to show the fraud set out in the complaint, and all the other allegations of the complaint, for the purpose of reforming the contract. The defendants objected to the testimony, unless it was introduced for the purpose of rescinding the contract. Whereupon, the counsel for the plaintiff stated that the purpose of the testimony offered was to reform the contract, and not to rescind it. The Court excluded the testimony, holding that it was not admissible for the purpose of reforming the contract, but that it was admissible for the purpose of rescinding the contract. Upon this intimation, the plaintiff submitted to a non-suit, and appealed to the Supreme Court.

*Mr C. W. Grandy,* for the plaintiff.

*Mr. Harvey Terry,* for the defendants.

SHEPHERD, J., (after stating the case). There is a hopeless conflict of authority upon the question, whether a court of equity will correct an *executory* contract on the ground of fraud or mistake, and enforce it with the variation.

In England, and several of the American States, such relief is denied, although a defendant, for the purpose of *resisting* specific performance, may show that, by fraud or mistake, the written contract does not express the real terms of the agreement. In other States, this distinction is repudiated, and the contract will be corrected and enforced, in proper cases, at the instance of either party.

Where such executory contracts, within the statute of frauds, are corrected and enforced, there is a further diversity—some courts holding that they will only exercise the power where the object is to *restrict* the subject matter of the contract, while others hold that the contract will be corrected, although its subject is *enlarged.* Of this latter opinion is Mr. Pomeroy (Pomeroy's Eq. Juris., 2 Vol., 367), and other writers of great respectability. Opposed to this view, we have the English authorities ( *Woollam* v. *Hearn,* White & Tudor's Leading Cases in Equity), and Bispham's Equity, Wharton's Evidence, § 1024, and many decisions in the United States, of which the leading case is *Glass* v. *Hurlbert,* 102 Mass., 24. In this case, the Court says, " that when the proposed reformation of an instrument involves the specific enforcementǀ of an oral agreement within the statute of frauds; or when the term sought to be added would modify the instrument so as to make it operate to convey an interest or secure a right, which can only be conveyed or secured through an instrument in writing, and for which no writing has ever existed, the statute of frauds is a sufficient answer to such proceeding, unless the plea of the statute can be

DAVIS *v.* ELY.

met by some ground of estoppel to deprive the party of the right to set up that defence. *Jordan* v. *Lawkins*, 1 Ves. Jr., 402; *Osborn* v. *Phelps*, 19 Conn., 63; *Clinan* v. *Cooke*, 1 Sch. & Lef., 22. But the fact that the omission, or defect, in the writing, by reason of which it failed to convey the land, or express the obligation which it is sought to make it convey or express, was occasioned by mistake, or by deceit and fraud, will not alone constitute such an estoppel.  *  *  *  * Rectification, by making the contract include obligations or subject matter to which its written terms will not apply, is a direct enforcement of the oral agreement, as much in conflict with the statute of frauds, as if there was no writing at all "

This decision, in so far as it holds that the subject matter of the contract may not be enlarged, is supported by abundant authority.

Story's Equity Jurisprudence is often cited to sustain the other view; but the argument there seems to be directed against the distinction between parties seeking and parties resisting specific performance. It refers to the decisions of Chancellor Kent in *Gillespie* v. *Moon*, 2 Johns., ch. 585, and *Kieselbrack* v. *Livingston*, 4 Johns., ch. 144. In neither of these cases was the subject matter enlarged. In *Gillespie's* case (so often cited), the correction made was the *striking out* of fifty acres from a written agreement which included two hundred and fifty. Bispham's Equity, 445, says, "that in cases which fall within the statute, it is obvious that to carry the rule in *Gillespie's* case to the extent of holding that an agreement (for example) to convey fifty acres may, for the sake of justice and equity, be construed to mean a contract to convey one hundred, would be to repeal the statute of frauds and to give effect to a simple verbal agreement to sell land. Where, however, the contention of the complainant is that something which is actually embraced in the writing was not intended to be included therein, to

suffer him to show this, is not to enforce a .parol contract in relation to. land; it is simply to prove that a written contract did not embrace all that on its face it appeared to include. Such was the actual state of the case in *Gillespie* v. *Moon.*"

It may be remarked that, in most of the. States where such relief is granted, the doctrine of part performance is recognized, and the proof required is but little short of that which is necessary to enforce a contract upon that ground.

In North Carolina, so far from correcting such executory contracts, within the statute, so as to *enlarge* their terms, the tendency of our decisions is to confine such corrective relief to *executed* contracts alone. We have been able to find no decision in point, but the words of HALL, J., in *Newsom* v. *Bufferlow*, 1 Dev. Eq., 379, strongly show the disinclination of the Court to depart from the statute, except upon the most imperative demands of justice and equity.

The learned Judge says: "It is altogether unnecessary to enquire in this case how far courts of equity have gone in carrying into effect written executory contracts, or varying them by parol evidence. Suffice it to say, that the reason why they have declined giving relief in many such cases, is that the plaintiff *had a remedy at law.* That reason is not applicable to executed contracts. In those cases the plaintiff has no remedy at law, and unless a court of equity will give relief, he can have no redress."

This distinction between executory and executed contracts is thus clearly put by Adams' Eq., 171 : " Where land is the subject of the erroneous instrument, the reformation of an *executed* conveyance is not precluded by the statute of frauds, for otherwise it would be impossible to give relief. But it does not appear that where the defendant has insisted on the benefit of the statute, the Court has ever reformed    *    *    *    *    an executory agreement on parol evidence, and specifically enforced it."

Land is regarded as such a high species of property that exceptional safeguards have been devised for the preservation and security of its title, and these should not be departed from, unless such departure is absolutely necessary to subserve the ends of justice. Under the former system, the equitable relief we have mentioned was administered by the trained minds of learned Judges, sitting as chancellors, who appreciated the grave evils which the statute was designed to prevent, and who gave full effect to the rule which required the clearest and most cogent testimony. Even then the relief in this State was confined, it seems, to *executed* contracts, and surely there is nothing in the new method of trying equitable issues which encourages us to leave the old moorings and venture upon a sea of trouble, confusion and insecurity.

On the ground of *necessity*, we correct conveyances by adding clauses of defeasance and words of inheritance. We also restrict, or enlarge, the subject matter, but we decline to do this in the case of executory contracts, where there can necessarily be no other object than, as in the case before us, to have it specifically enforced.

It is believed that no great hardship can result from such ruling, as the Court will, upon rescission, endeavor to place the parties *in statu quo*, and damages may be given for the fraud and deceit. The Court is liberal in the adjustment of equities arising in such cases; but even if occasional instances of hardship occur, it is far better that these should be endured than that every title in the State should be exposed to the assaults of false and fraudulent oral testimony.

What we have said has no reference to the correction of ordinary executory contracts in aid of actions for *damages* at law, such as the correction of the terms of a bond, and the like. Equity will always make the correction, and the party can sue upon the corrected contract at law. The two juris-

dictions being now blended, such relief will be granted in a single action. It may be that, in cases of personal property, where there is a *pretium affectionis*, the contract may be corrected and specifically enforced; but it is unnecessary to pass upon that question here.

The relief sought in this action is to correct the contract so as to include the "Hall tract." It seems, from the complaint, that the alleged fraud consisted in certain false representations as to the number of acres made to the plaintiff when the final agreement was made. False representations are also alleged to have been made to Mr. Griffin, the draughtsman, but these are not specified, and we must assume that they were the same as those made to his principal, Davis. However this may be, we have here a plain case, where it is proposed, upon parol testimony, to correct an executory contract for the sale of land, by making it include a larger quantity than is stated in the writing.

The plaintiff does not wish to rescind, and offers the parol testimony solely for the purpose of reformation.

We think that to admit the testimony in such cases would be, as has been said, virtually repealing the statute of frauds and opening the door to a flood of evils, the extent of which it would be impossible to estimate.

The plaintiff may enforce the contract in its present form, or he may rescind it, and ask for an adjustment of any equities which may have grown out of the transaction.

We think that the testimony was properly rejected, and that there is no error.

Affirmed.