(March 20, 1909.)

## HARDY L. ALLEN, Appellant, v. JOHN KITCHEN, Respondent.

[100 Pac. 1052.]

EXECUTORY CONTRACT FOR THE SALE OF REAL ESTATE—STATUTE OF FRAUDS—SPECIFIC PERFORMANCE—IDENTIFICATION OF SUBJECT MATTER—PAROL EVIDENCE—SUPPLYING DESCRIPTION—SUFFICIENCY OF DESCRIPTION—REFORMATION OF CONTRACT—EQUITY JURISDICTION—POWER OF EQUITY TO REFORM A CONTRACT.

1. An executory contract for the sale of real estate, describing the property to be conveyed as "Lots 11, 12 and 13 in Block 13, Lemp's Addition," and which contract fails to designate the state, county, civil or political district in which the land is situated, and fails to disclose the municipal or other subdivision to which the tract of land is an "addition," is an insufficient and void description and cannot be supplied or aided by parol evidence.

2. In an action for the specific performance of an executory contract for the sale of real estate, parol evidence is admissible for the purpose of applying the description contained in the writing, in order to show that there are lands of the name and description contained in the writing; but such evidence is not admissible for the purpose of supplying or adding to the description in order to make it comply with the requirements of the statute of frauds.

3. In actions for the specific performance of executory contracts for the sale of real estate, the distinction should always be clearly drawn between the admission of oral and extrinsic evidence for the purpose of identifying the land described in the writing, and *applying* the description therein contained, and that of *supplying* and adding to a description insufficient and void on its face.

4. Courts of equity have the power and jurisdiction to so reform executory contracts for the sale of real estate as to require and compel them to speak the truth in .a matter of description where it is clearly established that the instrument on its face speaks falsely; but a court of equity has no power or jurisdiction, under the pretense of reformation or otherwise, to so construct or reconstruct such an agreement as to add to the description or make a complete contract out of one which on its face was incomplete or insufficient to meet the requirements of the statute of frauds.

5. Courts of equity can no more disregard statutory requirements and provisions than can courts of law, and whenever the rights or the situation of parties are clearly defined and established by the provisions of the statute, equity has no power or jurisdiction to change or unsettle those rights or that situation; but in all such cases the maxim, *Equitas sequiter legem,* is applicable.

6. Where the statute of frauds requires certain contracts to be in writing, and prohibits oral evidence to establish such contracts, they must be deemed, both in law and equity, never to have been completed and consummated until reduced to writing and subscribed by the party to be bound as required by the statute. In such case, the law views the transaction as incomplete and that the assumed contract has never been consummated.

7. Courts of equity have power and jurisdiction to so reform an executory contract that is valid and binding on its face as to relieve it of any statement, declaration or description that has been inserted therein through deception, fraud or mutual mistake, and to make its statements speak the truth as it was intended to insert it in the instrument. On the other hand, courts of equity have no power or jurisdiction to construct or reconstruct an executory contract for the parties, or to insert therein a new and essential element or matter that is required by the statute to be reduced to writing in order to make the contract valid and binding.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District, for the County of Ada. Hon. Fremont Wood, Judge.

Action by the plaintiff for the specific performance of an executory contract for the sale of real estate. Judgment for defendant and plaintiff appealed. *Affirmed.*

J. C. Johnston, for Appellant.

"An agreement for the sale of lands, under the statute of frauds, will be held sufficient, as to its description of the

land to be conveyed, if it so discloses a particular piece or tract of land that it can be identified, located or found. Parol evidence may be resorted to to apply the description or identify the tract, though such description be somewhat general." (*Lente v. Clarke*, 22 Fla. 515, 1 So. 149; *Eggleston v. Wagner*, 46 Mich. 610, 10 N. W. 37; *Hollis v. Burgess*, 37 Kan. 487, 15 Pac. 536; *Barry v. Combe*, 1 Pet. 640, 7 L. ed. 295; *Nichols v. Johnson*, 10 Conn. 192; *Mead v. Parker*, 115 Mass. 413, 15 Am. Rep. 110; *Bulkley v. Devine*, 127 Ill. 406, 20 N. E. 16, 3 L. R. A. 330; *Tewsbury v. Howard*, 138 Ind. 103, 37 N. E. 355; *Wilson v. Riddick*, 100 Iowa, 697, 69 N. W. 1039; *Giles v. Swift*, 170 Mass. 461, 49 N. E. 737; *Tice v. Freeman*, 30 Minn. 389, 15 N. W. 674; *Black v. Crowther*, 74 Mo. App. 480; *Singleton v. Hill*, 91 Wis. 51, 51 Am. St. 868, 64 N. W. 588; 29 Am. & Eng. Ency. of Law, 2d ed., 866, 867; *Robeson v. Hornbaker*, 3 N. J. Eq. 60.)

It is not absolutely necessary that the state or county should be a part of the description. It is sufficient if, upon the whole instrument, it can be fairly inferred in what state or county the land lies. (*Tewsbury v. Howard, supra; Scanlan v. Geddes*, 112 Mass. 15; *Hurley v. Brown*, 98 Mass. 545, 96 Am. Dec. 671; *Quinn v. Champagne*, 38 Minn. 322, 37 N. W. 451; *Price v. McKay*, 53 N. J. Eq. 588, 32 Atl. 130; *Robeson v. Hornbaker*, 3 N. J. Eq. 60; *Dougherty v. Chestnutt*, 86 Tenn. 1, 5 S. W. 444; 29 Am. & Eng. Ency. of Law, 2d ed., 868.)

It is not required that the written contract itself should furnish the sole evidence of certainty and definiteness, where it is complete in its material terms, and there is sufficient certainty and definiteness for the court to supply either by proper reference to other documents, or by properly admissible parol evidence as to extrinsic facts, the necessary degree of exactness. (6 Pomeroy's Eq. Jur., sec. 766; *Peay v. Seigler*, 48 S. C. 496, 59 Am. St. 731, 26 S. E. 885; *Fowler v. Fowler*, 204 Ill. 82, 68 N. E. 414; *Ross v. Purse*, 17 Colo. 24, 28 Pac. 473; *Halsell v. Renfrow*, 14 Okl. 674, 78 Pac. 118.) The statute of frauds does not interfere with the power of the courts of equity to reform deeds or other in-

struments in which the parties intended to comply with the statute and were prevented by fraud, accident or mistake. (*Blackburn v. Randolph*, 33 Ark. 119; *Johnson v. Johnson*, 8 Baxt. (Tenn.) 261; *Durham v. Taylor*, 29 Ga. 166.) A court of equity may reform a written contract, upon parol evidence of fraud, or mistake, although the contract be one which the statute of frauds requires to be in writing. (*Rider v. Powell*, 4 Abb. Dec. 63; 23 Cent. Digest, col. 2319, sec. 267; *Morrison v. Collier*, 79 Ind. 417; *Dutch v. Boyd*, 81 Ind. 146; 6 Pomeroy's Eq. Jur., sec. 682.)

K. I. Perky, and John F. MacLane, for Respondent.

To comply with the statute of frauds, "the writing must state the contract with such certainty that its essentials will be known from the memorandum itself, or by reference contained in it to some other writing, without resource to parol evidence." (*Thompson v. Burns*, 15 Ida. 572, 99 Pac. 111; *Kurdy v. Rogers*, 10 Ida. 416, 79 Pac. 195.)

In the following cases, contracts were held insufficient under the statute of frauds, where they failed to identify the city or county in which the property was situated, and oral evidence to supply the deficiency was rejected: *Hartshorn v. Smart*, 67 Kan. 543, 73 Pac. 73; *Repetti v. Maisak*, 6 Mackey (D. C.), 366; *Waters v. Ritchie*, 3 App. D. C. 379; *Holmes v. Johnson*, 59 Tenn. 155; *Clark v. Chamberlin*, 112 Mass. 19; *Craig v. Zelian*, 137 Cal. 105, 69 Pac. 853.

We know of no case in which such a contract has been reformed, and to allow reformation would defeat the statute of frauds. (*Davis v. Ely*, 104 N. C. 16, 17 Am. St. 667, 10 S. E. 138, 5 L. R. A. 810; *Glass v. Hulbert*, 102 Mass. 24, 3 Am. Rep. 418.)

AILSHIE, J.—This action was instituted in the district court for the reformation and specific performance of a contract for the sale of real estate. The trial court sustained a demurrer to plaintiff's amended complaint and entered judgment of dismissal and for costs against the plaintiff. The contract upon which the action was brought in as follows:

"This article of agreement, made and entered into this 21st day of May, 1908, by and between H. L. Allen, party of the first part, and John Kitchen, party of the second part, witnesseth: That the party of the first part has this day bargained to sell and convey to party of the second part, with good and sufficient abstract of title to the following described property, to wit: Lots 11, 12 and 13 in Block 13, Lemp's Addition, consideration seventeen hundred dollars ($1700.00).

"In consideration of the above, and in payment of the same, party of the second part has this day bargained to sell and convey to party of the first part by good and sufficient title with good abstract showing the same, the following described property, to wit: Lot 27, Syringa Park Addition, consisting of 5 acres, consideration one thousand dollars ($1000.00). All papers to be completed and exchanged and all sums and differences due and payable must be settled on or before the 28th day of May, except as otherwise agreed in above contract.

"First Party, H. L. ALLEN.
"Second Party, JOHN KITCHEN.

"F. M. EBY, Witness."

It is first contended that this contract is sufficient to admit oral evidence showing the location of the lots and property intended to be conveyed. It will be observed that the lots to be sold and transferred by the party of the first part are described as "Lots 11, 12 and 13, in Block 13, Lemp's Addition," and that the property to be sold and transferred by the second party is described as "Lot 27, Syringa Park Addition, consisting of 5 acres." The contract nowhere shows or discloses the city, town, county or state in which it was executed, nor does it show the city, county, state or other civil or political division or district in which any of the property is situated. It is contended, however, by counsel for appellant that parol evidence is admissible for the purpose of completing the description so as to show the location of Lemp's addition and of Syringa Park addition. It is argued with much skill and ingenuity by appellant's coun-

sel that oral evidence is admissible for the purpose of show-ing the city, town or village to which these tracts of land are additions. Counsel has devoted a great deal of labor in collating the decisions upon this question, but our exam-ination of them fails to disclose a case identical with this.

*Hollis v. Burgess*, 37 Kan. 487, 15 Pac. 536, was a case where the contract consisted of a number of letters. The specific description of the property running through all these letters was given as the "Snow farm." The court held that where the land sold was so described, and it appeared that it was commonly designated and known throughout the neigh-borhood where situated by such a name, that extrinsic evi-dence was admissible to "apply the description" to the land intended to be sold. It should not be overlooked, however, that all the letters in that case disclosed that the land was situated in Clay county, Kansas, and that all the letters writ-ten by the owner of the land were written from Clay Center, Clay county, Kansas. The county and state in which the property was situated was therefore designated and estab-lished by the several communications constituting the con-tract. Oral evidence was therefore unnecessary to complete the description, but was rather necessary for the purpose of identifying and applying the description to the tract of land described by the writing.

In *Dougherty v. Chestnutt*, 86 Tenn. 1, 5 S. W. 444, the supreme court of Tennessee held a lease valid where the property let was described as follows: "All the right to quarry marble on the farm of Henderson Fudge, known as 'Rose Hill.' " It is also to be noted in this case that the instrument recited on its face that the lessor, the owner of the property, lived in Hawkins county, Tennessee, and the court observed that from such recital "it will reasonably be inferred that the lands lay in that county." Another thing that should not be overlooked in the case is that the lessee was let into possession of the property under this lease, and occupied and used the property for a consider-able length of time under and in compliance with the lease. These facts would tend to raise an estoppel and remove the

contract from the bar of the statute of frauds. The sylla-
bus to the case aptly states the exact points upon which the
decision turned, as follows: "Parol evidence is admissible to
*apply*, not to *supply*, a description of lands in a lease or
deed; e. g., it is competent in this case to show by parol
that there was a 'farm of Henderson Fudge' which was gen-
erally 'known as Rose Hill,' and to point it out."

Counsel places great reliance on the case of *Robeson v.
Hornbaker*, 3 N. J. Eq. 60. In that case the New Jersey
chancery court decreed specific performance of a contract
which failed to state in what township, county or state the
lots were situated. It rested its decree, however, upon two
statements of fact that appeared in the contract as parts
of the description or identification of the property. One was
reference to an ancient and well-known survey, commonly
designated as "Fenton and Lofter's survey," and the other
was reference to a stream known as "Brasscastle brook" at
a point "where the small stream puts in from the meadow."
Concerning this description, the court said:

"In this description there is a guide, in the first place,
the Brasscastle brook, which is a stream well known in that
part of the country where the parties reside. It is evident
from the agreement that it is a watercourse commanding a
good head of water. It is a natural object about which there
can be no dispute or mistake. Then, again, the line of the
property intersects the old line of the Fenton and Lofter's
surveys, and makes that line a part of its boundary. These
ancient surveys are in many parts of the country as well.
understood and known as the lines of townships or counties.
They constitute the most notorious and safe boundaries of
property, especially woodland, as I take the present to be.
With these designations of locality in the description (to
say nothing of others) I see no propriety in turning the
party out of court on a demurrer."

It is obvious, therefore, that the New Jersey case does not
support the description contained in the contract under con-
sideration. In that case the property was tied to well-known
natural objects and permanent monuments, one of which

was a well-known public survey, and the other, a natural stream; both probably well known throughout the state of New Jersey. This is by no means improbable when we remember that the entire state with its 7,800 square miles is not as large as many counties in Idaho.

In *Lente v. Clarke,* 22 Fla. 515, 1 So. 149, the Florida supreme court held the following description sufficient: "My forty near the Garrison lands in Hernando county," and after reviewing a great many cases dealing with descriptions and analyzing the particular description involved in that case, the court said:

"No one can for a moment doubt that by the expression, 'my forty near the Garrison lands, in Hernando county,' both parties understood and were dealing as to a single half of a half of a quarter section, claimed to be owned by the intestate, Thomas W. Clarke, and lying near lands known as the Garrison lands in that county. It must be assumed, looking at the terms of the contract, not only that they both had in view and understood that they were dealing as to, and contemplated a particular piece of land, but that they are lands in the county known as the 'Garrison lands,' and that both parties had these lands in their minds as the lands near which the intestate's 'forty' was situated. The contract identifies and furnishes the means of finding the land."

Concluding the opinion, the court said: "If it be that the intestate owned another forty near the Garrison lands, and consequently answering the same description, whereby the sufficiency of the contract as identifying a particular piece of land would be destroyed, the defendant can develop the fact in her answer."

In the Florida case, the county and state were designated and the description was confined to a forty acre tract,—presumably a forty as designated by the government survey,—and it was likewise designated as a forty owned and possessed by the vendor at the time the agreement was made, and situated in close proximity to real estate known as the "Garrison lands." As extreme as this case seems, still it

falls short of supporting the description involved in the case at bar.

In *Price v. McKay*, 53 N. J. Eq. 588, 32 Atl. 130, the court held a receipt dated at Jersey City and describing the property as a lot on Bramhall avenue, No. 470, a sufficient description. In support of this the court referred to the Massachusetts cases where it is held that the place of the date of the contract to convey real estate affords a presumption that the estate is situated in that place, and cited *Mead v. Parker*, 115 Mass. 413, 15 Am. Rep. 110. The chancellor, however, stated that he was willing to rest the decision upon the description contained in the receipt, freed from any such presumption. This description is the nearest approach to the case at bar to which our attention has been called. The chancellor in that case, by a circuitous course of reasoning, said:

"In the first place, the receipt indicates the vendor of the property—the defendant—and the lot purchased is, therefore, a lot owned by the defendant. Next, it is a lot number 470, Bramhall avenue, owned by her, and these two marks are together sufficient to locate the property."

This reasoning proceeds upon the fundamental basis that Bramhall avenue, independent of any city or municipality, was a well-known thoroughfare or natural object and permanent monument, and that any street number tied to that avenue would become definite and certain. There can be no doubt as to the conclusion reached in that case if it be once conceded that Bramhall avenue was such a natural and permanent landmark and thoroughfare as it is assumed to be by the opinion of the court.

We have reviewed the foregoing cases for the reason that they are by far the strongest cases that appellant has cited in support of his position. Many other cases are cited, but none perhaps so extreme as these. On the contrary, the great majority of courts have held that executory contracts and agreements for the sale of real estate must be complete and speak in definite terms of all the conditions, terms and descriptions necessary to constitute the contract.

In *Craig v. Zelian*, 137 Cal. 105, 69 Pac. 853, the supreme court of California, as late as 1902, in considering the sufficiency of a description contained in a memorandum, said:

"An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing, with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the parties negotiated, and supplying a description thereof which they have omitted from the writing."

In 1903 the supreme court of Kansas in *Hartshorn v. Smart*, 67 Kan. 543, 73 Pac. 73, had under consideration a description reading as follows: "The southeast of twenty-five, nine, Kingman, Kansas." This the court held to be an insufficient description, and that parol evidence was inadmissible to aid or help out the description.

In *Repetti v. Maisak*, 6 Mackey, 366, the supreme court of the District of Columbia had under consideration a description of property in the city of Washington, reading as follows: "Part of lots 1 and 2 in Square, south of Square 1036." The court held this description insufficient and void, and said: ·

"In a suit for specific performance of a contract to convey real estate, the agreement must be made out fully in writing; parol evidence cannot be resorted to, to supply any of its terms."

To the same effect is *Clark v. Chamberlin*, 112 Mass. 19, *McConnell v. Brillhart*, 17 Ill. 354, 65 Am. Dec. 661, *Holms v. Johnson*, 59 Tenn. 155, and many other authorities that might be cited.

This court has uniformly held that such a contract must speak for itself, and that parol evidence will not be admitted to supply any of its terms. In *Kurdy v. Rogers*, 10 Ida. 416 (at p. 423), 79 Pac. 195, this court said:

"The contract must speak for itself, and if it is sufficiently definite in its terms to enlighten the court of the intent of the parties, it will be enforced. Oral evidence is not admissible to make a contract of this character or supply any of its terms or conditions, for the reason that it would open the door to all manner of fraud and deception."

The latter case has been cited and approved and followed by this court in *Thompson v. Burns,* 15 Ida. 572, 99 Pac. 111, and *Sponberg v. First Nat. Bank,* 15 Ida. 671, 99 Pac. 712. It is contended, however, that the latter case is authority for the admission of oral evidence to supply the defects in the description in the case at bar. In that case, the letter constituting the memorandum was written under the letter-head of the First National Bank of Montpelier, Idaho, and was dated at Montpelier, and was signed by the cashier of the bank in his official capacity, and referred to and described the property as the "side room in our bank." This court held that oral evidence was admissible for the purpose of identifying the property described as the "side room in our bank." The only purpose of such evidence was that of identification. The bank referred to was the First National Bank of Montpelier, Idaho, and was of necessity located at Montpelier. It was a First National Bank, and, of course, as such had but one banking-house. The only thing necessary, therefore, was to identify the particular lot and block on which the First National Bank of Montpelier was located. It was clear from the description itself that there could only be one such property at Montpelier. No such question was involved as that presented here, and none of the cases cited in support of that holding go to the extent claimed in this case, nor do they support the proposition that parol evidence can be admitted for the purpose of supplying an insufficient description.

In the case at bar, there is no reference to any record or external or extrinsic description from which a complete description could be had, and no natural object or permanent monument is referred to in the writing, nor is any well and generally known point, place or locality described or used

as a tie. The evidence to be introduced would not be that of identification of a description, good on its face, but it would be for the purpose of supplying, completing and perfecting a description on its face insufficient and incapable of application. The name of the city, town or village, and also the county and state, must be supplied by extrinsic evidence. If the writing contained anything from which the name of the civil or political subdivision or municipality to˙ which these tracts are additions could be ascertained, then oral evidence would be admissible to apply the description contained in the writing to the lands as marked and bounded either by recognized legal subdivisions or by metes and bounds. We are in full accord with the views expressed in *Sponberg v. First National Bank, supra,* in that respect. The distinction, however, should always be clearly drawn between the admission of oral and extrinsic evidence for the purpose of identifying the land described and applying the description to the property and that of supplying and adding to a description insufficient and void on its face.

The complaint in this case recognized the fact that the description of the property as contained in the contract might be, and probably was, insufficient, and the plaintiff therefore sought to have the contract reformed so that the one description would read as follows: "Lots 11, 12 and 14, in Block 13, in Lemp's Addition to Boise City, Idaho, as shown by the recorded plat on file," and the other description read: "Lot 27 in Syringa Park Addition in Ada County, Idaho, as shown by the recorded plat hereof on file in the office˙ of the recorder of deeds, Ada County, Idaho."

It is alleged in the complaint that the contracting parties consulted maps and plats and submitted the same to the scrivener who drew up the contract, and instructed him to take the description from the maps, and that by neglect, mistake, and oversight, he omitted a part of the description as appears from the contract. The question arises as to whether or not a contract of this kind within the statute of frauds (sec. 6007 of the Revised Codes) can be so reformed by a court of equity as to make a good and complete description

Opinion of the Court—Ailshie, J.

out of an insufficient and void description. It is not a question here of making a contract speak the truth which by its terms speaks untruthfully; or, in other words, of making a contract express the true intent of the contracting parties where, in fact, it expresses on its face something they did not intend or agree upon. There is no contention made here that the contract in any way speaks untruthfully. The complaint is that it does not speak the whole truth. This is the very thing the statute of frauds is enacted to guard against. It requires the contract to be in writing, and prohibits oral evidence to establish a contract of this kind. There is no contract until it is reduced to writing as provided by law. It is not a question as to what the contract was intended to be, but, rather, was it consummated by being reduced to writing as prescribed by the statute of frauds. Admittedly, an essential portion of the contract in this case was not reduced to writing and subscribed by the party to be bound. This case, therefore, presents the question of adding to and supplying an insufficient description, rather than that of reforming an untruthful description. If a court of equity can supply one requirement of a contract that is required by the statute of frauds to be in writing, it may supply another, and the logical conclusion would be that it might in the end supply all the requirements and thereby contravene. a positive statute. This cannot be done. Courts of equity are as much bound by positive enactments of law as are courts of law. It was said by the supreme court of the United States in *Hedges v. Dixon County*, 150 U. S. 182, 14 Sup. Ct. 71, 37 L. ed. 1044:

"Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and where the transaction, or the contract, is declared void because not in compliance with express statutory or constitutional provisions, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof."

And likewise, in *Magniac v. Thomson,* 56 U. S. 282, 14 L. ed. 696, it was said: "That wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *Equitas sequiter legem* is strictly applicable."

In *Dickinson v. Glenney,* 27 Conn. 104, the court was called upon to grant relief by reforming a deed and correcting and perfecting the acknowledgment of a married woman. The court in considering its power to grant the relief said:

"But at the threshold of this inquiry, we are met with the established doctrine that equity will not contravene the positive enactments or requirements of law and defeat its policy by supplying, under the guise of amending defective instruments, those deficient elements of form without which the agreement is absolutely void, even as between the parties to it; that it will not fabricate for contracting parties those essential ingredients of a contract, without which in the eye of the law there subsists no valid contract whatever. In such cases the intent of parties to conform to the enactments or rules of law will not avail them, and, having fallen short of its requirements, they have consummated no agreement at all."

The case at bar differs from most of the cases to which our attention has been called by the briefs, in that there is no element of estoppel involved. Here the plaintiff has never entered into possession of the property about which he sought to contract, nor has he paid any part of the purchase price. He has not placed any improvements upon the property, nor has he been induced to act in any manner to his prejudice by reason of this contract or of the action or conduct of the defendant. Nothing appears in the case to remove it from the operation of the statute of frauds or by reason of which plaintiff may invoke the doctrine of estoppel against the defendant. In fact, it does appear that neither party to the agreement ever did anything under the agreement in any manner looking to its consummation or carrying out its provisions.

Respondent argues, and cites cases to support his contention, that courts of equity cannot interpose their equitable jurisdiction for the reformation of contracts that fall within the operation of the statute of frauds. He contends that an executory contract for the sale of real estate cannot in the face of the plain provisions of the statute of frauds (sec. 6007, Rev. Codes), be reformed by a court of equity so as to render the contract enforceable after its reformation in a case where it was not enforceable before reformation.

Counsel for appellant, on the other hand, contends that such contracts are subject to reformation by courts of equity for fraud, deception and mistake, the same as any other contracts cognizable by courts of equity.

These propositions and contentions at once present a question of equity jurisprudence on which both the courts and text-writers are at variance in their opinions. Mr. Pomeroy, Jr., author of the latest edition of Pomeroy's Equity Jurisprudence, represents what might be termed the extreme of the authorities sustaining the jurisdiction and power of equity courts ''to uplift'' the statute of frauds and reform executory contracts so as to make them speak the intent of the parties as their minds met in the oral contract. (2 Pomeroy's Equity Jurisprudence, 3d ed., secs. 864-868.) It is safe to say that the American authorities supporting the position that this class of contracts are subject to reformation the same as any other contracts, rest upon and revolve about the case of *Gillespie v. Moon*, 2 Johns. Ch. 585, 7 Am. Dec. 559, the opinion in which was written by Chancellor Kent in 1817. That was a case where a *cestui que trust*, after reaching majority, filed a bill in equity to compel the reconveyance of fifty acres of land that had been included by mistake in a deed of conveyance previously executed by the trustee. It seems that the trustee sold 200 acres of land, and in executing the deed by mistake included, not only the 200 acres, but an additional tract of 50 acres belonging to the *cestui que trust*. Chancellor Kent, considering the grounds upon which to rest a decree granting the plaintiff relief in that case, took occasion to consider at some length and in detail the equitable

jurisdiction of the court of chancery to reform contracts that are within the provisions of the statute of frauds. This case has furnished the basis for a great deal of discussion, and, to my mind, some very illogical reasoning in support of an unlimited power in equity courts for reformation of executory contracts falling within the bar of the statute of frauds. The cases supporting this doctrine are to be found in the notes to sections 865, 866 and 867 of 2 Pomeroy on Equity Jurisprudence, and a note to *Gillespie v. Moon,* 7 Am. Dec. 567, and note to *Page v. Higgins,* 5 L. R. A. 152 et seq.

The case of *Glass v. Hulbert,* 102 Mass. 24, 3 Am. Rep. 418, perhaps represents the extreme view on the other side, to the effect that courts of equity have no jurisdiction or power to reform instruments that fall within the statute of frauds. That case is a very able and exhaustive review of the authorities and consideration of the principle involved, and deals with the equitable principle upon which it must of necessity rest. The court there considered, reviewed and distinguished the case of *Gillespie v. Moon.* The Massachusetts court insists that the opinion of Chancellor Kent is not authority for holding that an executory contract for the sale of real estate can be so reformed as to include within the contract property that is not described in the agreement. The view taken by the Massachusetts court in *Glass v. Hulbert* has been adopted and following in Connecticut (*Osborn v. Phelps,* 19 Conn. 63, 48 Am. Dec. 133), in Maine (*Elder v. Elder,* 10 Me. 80, 25 Am. Dec. 205), in New Jersey (*Miller v. Chetwood,* 2 N. J. Eq. 199), in Michigan (*Climer v. Hovey,* 15 Mich. 18), in Oregon (*Whiteaker v. Vanschoiack,* 5 Or. 113), and in North Carolina (*Davis v. Ely,* 104 N. C. 16, 17 Am. St. 667, 10 S. E. 138, 5 L. R. A. 810).

After a very careful examination of the many authorities dealing with this question, we are clearly of the opinion that courts of equity have power and jurisdiction to so reform an executory contract that is valid and binding on its face, as to relieve it of any statement, declaration or description that has been inserted therein through deception, fraud or mutual mistake, and to make the statements speak the truth as it was

intended to insert them in the instrument. On the other hand, we are equally satisfied that a court of equity has no power or jurisdiction to construct an executory agreement for the parties or to insert therein new and essential elements or matter that is required by the statute to be reduced to writing in order to make the contract valid and binding. In other words, reformation does not mean re-creation. The court will not, under the guise of reforming an instrument, construct or re-construct the instrument so as to make it comply with the statute.

Mr. Pomeroy's discussion on this subject, when reduced to its final analysis, as contained in sec. 865 (vol. 2), seems to clearly recognize the force of this position. He says that all possible errors in such a contract, whether arising from mistake, surprise or fraud, and for that reason requiring a reformation, are reducible to two general classes. First, cases where the contract by its terms includes subject matter which was not intended by the parties to come within its operation; and second, those contracts wherein, by means of the mistake, surprise or fraud, some part of the subject matter intended to be included within the contract has been omitted. In the one case, he says parol evidence is admissible to prove that the contract contains too much subject matter; in the other case, parol evidence is admissible to prove that the contract does not contain enough subject matter. These two propositions are sustained by the weight of authority.

Our examination of this matter satisfies us that the contract sued upon is not such a completed contract within the requirements of the statute of frauds as is capable of specific performance. We are equally clear, on the other hand, that this is not a case for reformation of a contract. The reformation sought would have the effect of supplying the contract with a material and essential element, rather than that of correcting a mistake that has been made in the contract itself.

The judgment of the trial court must be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Sullivan, C. J., and Stewart, J., concur.