## SOUTHERN COAST CORPORATION v. SINCLAIR REFINING CO.

Civil Action No. 391.

District Court, S. D. Texas,
Corpus Christi Division.

Aug. 18, 1948.

240

Kemp, Lewright, Dyer & Sorrell, of Corpus Christi, Tex., and Willis & Lewis, of Dallas, Tex., for plaintiff.

Boone, Boone & Davis, of Corpus Christi, Tex., and Cantey, Hanger, McKnight & Johnson, of Fort Worth, Tex., for defendant.

HANNAY, District Judge.

The Court finds the following to be the facts:

1. Plaintiff, Southern Coast Corporation, sued Sinclair Refining Company, as assignee of Terminal Refining Corporation, upon three written contracts (and oral agreements alleged to have been made contemporaneously therewith), which are attached hereto and marked "Exhibits 1, 2 and 3," respectively. Plaintiff's trial pleading is in its second amended petition, to which reference is here made. Defendant's trial pleading is in its second amended answer, to which reference is also made. Prior to the filing of the second amended petition in which reformation was first asked and ambiguity was first specifically alleged, a hearing was held before one of the judges of this Court in which plaintiff sought a temporary mandatory injunction to prevent defendant from severing its connection with plaintiff's pipe line and requiring defendant to continue to purchase all of the gas needed by it from plaintiff through the year ending December 31, 1951, at 5½¢ per 1,000 cubic feet. Defendant answered this complaint as evidenced by their first amended answer. After a hearing, the Court refused the injunction, holding in effect that the defendant, Sinclair Refining Company, was within its rights in purchasing gas after December 31, 1945, from Sinclair Prairie Oil Company. A copy of the Court's opinion is attached hereto and marked "Exhibit 4" for identification. After the Court rendered its opinion on the application for a temporary injunction, plaintiff filed its second amended petition and defendant filed its second amended answer. Trial was had at Corpus Christi, Texas, in which evidence was then adduced and argument of counsel was had. This trial began on January 14, 1947, and ended on January 17, 1947; whereupon the Court took the case under advisement, considered the pleadings, the record and the briefs of the parties.

2. Just prior to the completion of the evidence on January 17, 1947, the plaintiff presented its trial amendment, in which, for the first time, plaintiff alleged Sinclair Prairie Oil Company was "a reputable, re-

sponsible and then existing gas pipe line distributing company," and alleged that the purchase of gas by plaintiff from Sinclair Prairie Oil Company and the laying of the line under Nueces Bay to defendant's refinery without permitting plaintiff to meet the price and terms of Sinclair Prairie Oil Company, constituted a breach of the contract. The defendant presented objections to the filing of such trial amendment. Evidence was then practically completed and issues drawn and made. The Court refused to permit the filing of the trial amendment for the following reasons: First, it came too late, plaintiff having theretofore taken a contrary stand; and, second, the evidence in the Court's opinion failed to justify the allegations made. Plaintiff excepted to the ruling of the Court. The trial was completed and the argument was had on the evidence presented upon the issues made by the pleadings on file prior to the presentation of trial amendment.

3. Plaintiff sues Sinclair Refining Company as assignee of Terminal Refining Corporation, alleging that the former assumed all the obligations and liabilities of the latter, including the written and oral contracts sued upon. Defendant denies that it assumed any obligations imposed by the alleged oral contracts. The proof shows that on the 16th day of December, 1942, Consolidated Oil Corporation owned all of the stock in Sinclair Refining Company and purchased the stock of Terminal Refining Corporation. Thereafter, Consolidated Oil Corporation dissolved Terminal Refining Corporation, and as a step in the dissolution substantially all of the assets of Terminal Refining Corporation was conveyed by it to Sinclair Refining Company for a stated money consideration, which was paid, and Sinclair Refining Company assumed all the debts and liabilities of the Terminal Refining Corporation. Sinclair Refining Company had no notice of any of the oral or verbal arrangements or contracts sued upon unless and except as notice may be imputed to them under the record as stated.

4. It is alleged by plaintiff that Sinclair Refining Company took all of its gas from plaintiff up to and including the year 1945, but that several months prior to December 31, 1945, Sinclair Refining Company notified plaintiff that it would not take gas from it after December 31, 1945 but would purchase its gas from Sinclair Prairie Oil Company. Plaintiff alleges that it had the preferential right to furnish Sinclair Refining Company with all of its gas requirements through 1951 at $5\frac{1}{2}\cancel{c}$ per 1,000 cubic feet after January 1, 1946, unless prior to December 31, 1945, Sinclair Refining Company obtained a bid for less than $5\frac{1}{2}\cancel{c}$ per 1,000 cubic feet from a then existing, reputable and responsible gas pipe line distributing company, in which event Sinclair Refining Company was required to submit such bid to plaintiff and plaintiff had the right either to accept such bid and furnish the gas at the price and on the terms therein stated, or to refuse to do so, in which event Sinclair Refining Company was free then to purchase its gas requirements elsewhere for the years beginning January 1, 1946, and ending December 31, 1951. Plaintiff alleges that some time prior to December 31, 1945, defendant, Sinclair Refining Company, breached its contract, in that, instead of obtaining a bid from a then existing, reputable and responsible gas pipe line distributing company for the years stated, to-wit: January 1, 1946 through December 31, 1951, it contracted with an affiliate corporation, Sinclair Prairie Oil Company, for gas during such years at a comparatively cheaper price, to-wit: $3\cancel{c}$ per 1,000 cubic feet, for use in the operation of its refinery and built a pipe line from its refinery on the mainland under Nueces Bay to the field across the Bay where Sinclair Prairie Oil Company was producing gas. It is likewise alleged that under the contracts as written, defendant, Sinclair Refining Company, as assignee of Terminal Refining Corporation, was obligated to take all of its gas for the operation of its refinery (purchased from Terminal) from plaintiff at $5\frac{1}{2}\cancel{c}$ per 1,000 cubic feet unless Sinclair Refining Company received prior to December 31, 1945 a bid from a then existing, reputable and responsible gas pipe line distributing company at a lesser price for such additional years.

5. Plaintiff alleges that the contracts as written should be interpreted, as aleged, in light of all the surrounding circumstances and the understanding of the parties at the time; that if such contracts are not subject to such interpretation, they are ambiguous and under the parol evidence they should be read so as to import the obligation stated. It is then alleged that if such contracts are ambiguous, then they should be reformed so as to carry out the obligations stated and have the meaning after December 31, 1945, hereinbefore referred to. Ambiguity was first alleged and reformation was first asked in the second amended petition filed in this cause on the 15th day of April, 1946.

6. Defendant denies all of the material allegations and specifically denies that the contracts have the meaning stated. It avers that it did not receive a bid from a reputable and then existing responsible gas pipe line distributing company prior to December 31, 1945, and that it made arrangements to buy its gas from an affiliated corporation, to-wit: Sinclair Prairie Oil Company, for the operation of its refinery at Corpus Christi and to lay a pipe line under Nueces Bay from the field in which Sinclair Prairie Oil Company operated for the purpose of having the gas transmitted to Sinclair Refining Company at its refinery across the Bay. It denies that Terminal Refining Corporation made any of the oral agreements stated, and that if such agreements were made, such oral agreements (contrary to the writings) are not binding upon Sinclair Refining Company on the theory that the latter company was an innocent purchaser. It also pleads the Two and Four Year Statute of Limitations to the effort of plaintiff to reform the written contracts so as to speak the alleged intention of the parties and pleads the Texas State of Frauds, Article 3995, Rev.St., and particularly Section 5 thereof, to the effort of plaintiff to reform the agreements.

7. The Court finds that Sinclair Refining Company was, under the written contracts, within its rights in refusing to take gas from plaintiff after December 31, 1945, and that Sinclair Refining Company did not breach any of the terms of the written contracts in making arrangements for its supply of gas from an affiliated corporation, to-wit, Sinclair Prairie Oil Company.

8. The Court further finds that no oral agreements were made between T. E. McArdle, as representative of Terminal Refining Corporation, and S. C. Lewis, as representative of Southern Coast Corporation, contrary to the terms and stipulations contained in the written agreements; and, specifically, the Court fails to find from the evidence that Terminal Refining Corporation did agree to give Southern Coast Corporation the preferential right to sell Terminal Refining Corporation gas from January 1, 1946 to December 31, 1951, at 5½¢ per 1,000 cubic feet in the absence of a lesser price quoted by a then existing, reputable and responsible gas pipeline distributing company.

9. The Court further finds, however, that if such oral agreement or agreements were made as alleged and claimed (which the Court does not find), such oral agreements are unenforceable after December 31, 1945, and the written contract sued upon cannot be reformed under the Four Year Texas Statute of Limitation, Article 5529, and the Texas Statute of Frauds, Article 3995, Section 5.

10. The Court finds that defendant is not estopped from pleading the Texas Statute of Frauds because it took gas from plaintiff up to December 31, 1945, or from any other cause.

11. The Court further finds that if such oral agreement or agreements as alleged were made, such oral agreement or agreements are not enforceable against Sinclair Refining Company who acquired the refinery in question without notice or knowledge of such oral agreement or agreements.

Conclusions of Law.

The Court concludes that as a matter of law:

(1) Plaintiff is not entitled to recover against the defendant herein.

(2) In support of the Court's conclusion that parol evidence is not admissible to vary the terms of the written contracts, and that under the contracts as written, plaintiff is not entitled to recover.

the following authorities (in addition to the opinion of Judge Kennerly) are cited: Lewis et al. v. East Texas Finance Co. et al., 136 Tex. 149, 146 S.W.2d 977, 980; Remington Rand, Inc. v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477, 483; Sickelco v. Union Pac. R. Co. et al., 9 Cir., 111 F.2d 746; Anderson & Kerr Drilling Co. v. Bruhlmeyer et al., 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Trinity County Lumber Co. v. Ocean Accident & Guarantee Corporation, Ltd., Tex.Com.App., 228 S.W. 114, 116; Birk v. Jackson, Tex.Civ.App., 75 S.W.2d 918, 922 (Writ refused).

■ (3) Under the finding that even if such oral contracts as alleged were made, the written contracts cannot be reformed at this time to speak the terms of the alleged oral agreement, such oral contracts are unenforceable for the years after 1945 under a timely pleading of the Four Year Statute of Limitation by defendant, Article 5529 of Texas Revised Statutes, the Court cites the following authorities: Pure Oil Co. v. Ross, et al., 131 Tex. 41, 111 S.W.2d 1076; Roos v. Texas Co., 5 Cir., 126 F.2d 767; Cleveland State Bank v. Gardner, Tex.Com.App., 286 S.W. 173; Gulf Production Co. et al. v. Palmer et ux., Tex. Civ.App., 230 S.W. 1017, 1021; Mathis v. Stockdick, Tex.Civ.App., 189 S.W.2d 106.

■ (4) Even if the oral contract was made so far as the period after December 31, 1945, is concerned, such oral contract under the Texas Statute of Frauds is unenforceable and cannot be used as a basis of reformation. In support of this conclusion, the Court cites the following authorities: East v. Garcia et al., Tex.Civ.App., 295 S.W. 239 (Writ refused by Supreme Court); Kistler v. Latham et al., Tex. Com.App., 255 S.W. 983; Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; Safe Deposit & Trust Co. of Pittsburg v. Diamond Coal & Coke Co., 234 Pa. 100, 83 A. 54, L.R.A.1917A. 596; Allen v. Kitchen, 16 Idaho 133, 100 P. 1052; Davis v. Ely et al., 104 N.C. 16, 10 S.E. 138, 140.

■ (5) Under the finding that defendant is not estopped to plead and rely under the Statute of Frauds, the Court cites the following authorities: Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114; Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 141 A.L.R. 808; Kistler v. Latham et al., Tex.Com.App., 255 S.W. 983; James v. National Cotton Oil Co., 31 Tex.Civ.App. 420, 72 S.W. 248; Wewerka et al. v. Lantron, Tex.Civ.App., 174 S.W. 2d 630; Jackman v. Anheuser–Busch, Inc., Tex.Civ.App., 162 S.W.2d 744.

■ (6) Under the finding that the alleged oral contract made by Terminal Refining Corporation (which the Court does not find was made) is not binding upon Sinclair Refining Company for the years after December 31, 1945, the Court cites the following authority: Black v. Richfield Oil Corporation, 9 Cir., 146 F.2d 801.

As stated, the Court concludes as a matter of law that plaintiff, Southern Coast Corporation, is not entitled to recover anything against defendant Sinclair Refining Company, and judgment will be for the latter company. All costs of this proceeding are taxed against the plaintiff, and counsel will prepare and submit to the Court a decree accordingly.

The Clerk will notify counsel.

Exhibit 1

August 21st, 1939.

C
O
P
Y

Terminal Refining Corporation
Poth Lane
Corpus Christi, Texas
Gentlemen:

This will confirm the verbal proposition I made you to date, to-wit:

This company is to furnish your entire gas requirements for the operation of your refinery up to and including the 31st day of December, 1941, on the following basis and schedule:

1939: A minimum rate of $450.00 per month shall prevail, maximum amount of gas to be furnished— sixty million cubic feet of gas per month, all over and above this amount to be charged for at the rate of two cents (2¢) per thousand cubic feet. In the event your re-

244

quirements should drop to thirty million cubic feet of gas per month or less, a minium charge of $300.00 shall prevail: however, should your refinery be closed down for a period of fifteen days or longer in any one calendar month, then in that event you will be charged on the basis of One Cent per thousand cubic feet of gas for gas delivered during such month, with a minimum charge, however, being made of $100.00 per month.

1940: A minimum rate of $450.00 per month shall prevail, maximum amount of gas to be furnished—sixty million cubic feet of gas per month, all over and above this amount to be charged for at the rate of two and one half cents (2½¢) per thousand cubic feet of gas. In the event your requirements should drop to thirty million cubic feet of gas per month or less, a minimum charge of $300.00 per month shall prevail: however, should your refinery be closed down for a period of fifteen days or longer in any one calendar month, then in that event you will be charged on the basis of One Cent per thousand cubic feet of gas for gas delivered during such month with a minimum charge, however, being made of $100.00 per month.

1941: A minimum rate of $450.00 per month shall prevail, maximum amount of gas to be furnished—sixty million cubic feet of gas per month, all over and above this amount to be charged for at the rate of Three Cents (3¢) per thousand cubic feet of gas. In the event your requirements should drop to thirty million cubic feet of gas per month or less, a minimum charge of $300.00 per month shall prevail: however, should your refinery be closed down for a period of fifteen days or longer in any one calendar month, then in that event you will be charged on the basis of One Cent per thousand cubic feet of gas for gas delivered during such month with a minimum charge, however, being made of $100.00 per month.

Payment for the gas shall be made not later than the 10th day of the month for the gas purchased and delivered hereunder during the preceding month.

You are to furnish and lay suitable four inch pipe necessary for the connection with our high-pressure line, which we estimate to be about two thousand feet, but the cost of this pipe to you may be deducted from twenty-five per cent of the amount of your monthly gas bill until you have been reimbursed for the cost thereof, at which time the line is to belong to this company.

The delivery of the gas to your existing pipe line system shall end the liability of this company and the title to said gas shall pass to you upon delivery of same to your system.

We will at our own expense furnish and install a suitable meter and the gas delivered to you shall be metered and be computed on the basis of 4 oz. above an assumed atmospheric pressure of 14.65 pounds per square inch, absolute, and at a base temperature of 60% Farenheit, and an assumed flowing temperature of 70% Farenheit. The meter and charts shall at all times be subject to inspection, check and verification, and test as to accuracy or inaccuracy of same.

This agreement is subject to the rules and regulations of the Railroad Commission of the State of Texas or any other regulatory body having jurisdiction herein.

This contract is to become effective as of the date your line is connected to our system, and the delivery of gas is actually commenced.

Respectfully submitted,
Southern Coast Corporation
(By) Signed—S. C. Lewis

sel:f

C
 O
  P
   Y

Terminal Refining Corporation
Page 3—

The above and foregoing is hereby accepted and agreed to:

Terminal Refining Corporation
By: (Signed) T. E. McArdle

Paragraph No. 3, providing for delivery for the year 1939 and until February 21st, 1940, is modified in the following respect and to the following extent, only, towit:

A minimum rate of $300.00 per month shall prevail for the aforesaid period, instead of a minimum rate of $450.00 per month.

In all other respects the terms and provisions are in no way affected.

Southern Coast Corporation
By (Signed) S. C. Lewis
Terminal Refining Corporation
By (Signed) T. E. McArdle
President

Exhibit 2

November 28th, 1940

C
O
P
Y

Terminal Refining Corp.
Tribble Lane
Corpus Christi, Texas
Att'n: Mr. T. E. McArdle

Gentlemen:

This shall constitute a supplemental agreement to our contract dated August 21, 1939, in the form of a letter by which this company was to furnish you gas for the operation of your refinery for the years 1939, 1940 and 1941. This contract is hereby extended to include the full calendar years 1942, 1943, 1944 and up to and including December 31st, 1945, the gas to be furnished and delivered to you at the following price schedule:

| Year | Rate |
|------|------|
| 1942 | 3¢ per thousand cubic feet of gas. |
| 1943 | 3½¢ " " " " " " |
| 1944 | 4¢ " " " " " " |
| 1945 | 4½¢ " " " " " " |

You are to be charged on the basis of the actual amount of gas delivered to your refinery, with a minimum charge, however, being made of $100.00 per month in the form of a stand-by service charge. It is agreed, however, that if and in the event your plant should be shut down for more than sixty (60) continuous days, then such stand-by service shall become inoperative until such time as you resume operations. The maximum amount of gas on which you have a call at the price schedule herein set forth shall be 100,000,000 cubic feet of gas per month. The provision in the original contract allowing you a maximum of 60,000,000 cubic feet of gas per month with a maximum charge of $450. per month is hereby eliminated during the extended period provided for herein.

It is agreed that you shall have the option to purchase gas for the years from 1946 through 1951, inclusive, at the rate of 5½¢ per cubic thousand feet of gas, provided same is exercised in writing on or before ninety (90) days from the end of this contract period.

It is further agreed that Southern Coast Corporation shall have the preferred and preferential right in the event you do not exercise such option to meet any price for gas quoted to you by a reputable, responsible and then existing gas pipe line distributing company, and before purchasing gas from any such competitor you shall first obtain the refusal in writing from Southern Coast Corporation declining to meet such competitive price as offered.

It is further agreed that if and in the event there should be any increase in taxes on gas, either state or federal, made subsequent to the year 1941, then such additional tax shall be added to the optional right to purchase at the price as above provided for.

It is further agreed and understood that if and in the event any tax over and above any amount that may be existing as of May 1st, 1941, shall be imposed against Southern Coast Corporation by legislation, either state or federal, or that Southern Coast Corporation may assume by virtue of contract and which tax would amount or equal ½ of 1¢ per thousand cubic feet, shall at the option of the Southern Coast Corporation entitle it to cancel and terminate this contract by giving ninety (90) days' notice in writing: provided, however, you at your election may agree to assume such

additional tax and thereby keep said contract in full force and effect.

In all other respects the terms and provisions of the contract dated August 21st, 1939, shall remain in full force and effect, except as herein modified.

Yours very truly,
Southern Coast Corporation
By (Signed) S. C. Lewis
President

DBK:Mc

The above and foregoing is hereby accepted and agreed to:
Terminal Refining Corporation
By (Signed)  T. E. McArdle

May 15, 1942.

C
  O
    P
      Y

Terminal Refining Corporation
Tribble Lane
Corpus Christi, Texas
Gentlemen:

Referring to our contract with your company dated August 21st, 1939, and as amended by a supplement agreement dated November 28th, 1940 covering your gas requirements for fuel purposes in the operation of your refinery and in connection with which you have advised us as follows:

That your company has entered into a contract with the Defense Plant and Supplies Corporation for the enlargement and improvement of your plant together with the construction of new units for the manufacture of aviation gasoline which when completed will require an estimated maximum peak of 300,000,000 cu feet of gas per month, whereas under the terms of the existing contract you only have a maximum call of 100,000,000 cu feet of gas per month.

Therefore it is hereby agreed that the following provision found in the last paragraph of page one of the above contract shall be amended only in the respects hereinafter noted.  Said provision is as follows:

"The maximum amount of gas on which you have a call at the price schedule herein set forth shall be 100,000,000 cubic feet of gas per month"

The above provision is hereby amended to read as follows:

"The maximum amount of gas on which you shall have a call at the price schedule set forth in the supplement agreement dated November 28th, 1940 referred to above shall be 300,000,000 cubic feet of gas per month, and in consideration of such a maximum call you agree to purchase from us your requirement of natural gas for fuel purposes less that which you may manufacture and use for fuel purposes irrespective of the volume required by in no event to exceed 300,000,000 cu feet of gas per month."

Yours very truly,
Southern Coast Corporation
(Signed)  S. C. Lewis
President

The above and foregoing is hereby accepted and agreed to:
Terminal Refining Corporation
(Signed)  T. E. McArdle,
President.

Exhibit 4

(COPY)

In the District Court of the United States for the Southern District of Texas Corpus Christi Division

Southern Coast Corporation, Plaintiff,— versus—Sinclair Refining Company, Defendant.  Civil Action No. 391

Thompson, Knight, Harris & Wright, and Weisberg, of Dallas, Texas; and Kemp, Lewright, Dyer, Wilson and Sorrell (W. M. Lewright), of Corpus Christi, Texas, for plaintiff.

Boone, Boone & Davis, of Corpus Christi, Texas; V. R. Tomlinson, of Fort Worth, Texas; and Cantey, Hanger, McMahon, McKnight & Johnson (Alfred McKnight), of Fort Worth, Texas, for defendant.

March 30, 1946.

Memorandum on Plaintiff's Motion for Preliminary Injunction:

1. I do not think the Sinclair Prairie Oil Company is a necessary party as between plaintiff and defendant, but it may be that defendant may under Rule 14,

bring such Oil Company in as a Third Party Defendant.

2. The contracts sued on are dated August 21, 1939, November 28, 1940, and May 15, 1942. I incline to the view that defendant was, under the wording of the contracts, within its rights in building its own Pipe Line to the gas fields and purchasing its gas from wells in such field and in ceasing on December 31, 1945, to take gas from plaintiff under such contracts.

3. Preliminary Injunction is denied, but since I have heard the Application for Injunction in the absence of Judge Hannay, in whose Division it is pending, plaintiff shall be privileged, if Judge Hannay approves, to have another hearing before him.

s/T. M. Kennerly
United States District Judge.